SOUTHBRIDGE SAVINGS BANK *vs.* EXETER MACHINE WORKS,

Worcester    October 3. — 27, 1879.    ENDICOTT & LORD, JJ., absent.

A boiler composed of distinct sections was placed by the owner of a machine-shop inside of a brick casing built on the ground. The sections weighed four hundred pounds each, and rested on an iron plate which rested on the inside of the casing. On the top of the casing, but not fastened to it, were iron plates, which could be removed, and each section taken out, without disturbing the brickwork. Water-pipes and steam-pipes were connected with each section by holes cut through the casing, but could be detached therefrom. The boiler, in connection with the steam-engine, shafting, &c., was adapted to the machine-shop and business, and was used in such business. *Held,* that the boiler was a part of the realty as between mortgagor and mortgagee.

An agreement between the seller and buyer of a boiler, placed in a machine-shop, and so annexed to the realty as to become a part of it, that the boiler should remain the personal property of the seller until paid for, does not bind a subsequent mortgagee without notice.

BILL IN EQUITY, filed October 17, 1878, to restrain the defendant from removing a boiler from a parcel of land in Brookfield. Hearing before *Colt,* J., who allowed a bill of exceptions in substance as follows:

The defendant, in July 1877, delivered to one Stevens, to be used on trial at his machine-shop in Brookfield, an Exeter sectional boiler, which by agreement between them was to remain the personal property of the defendant until paid for. On August 6, 1877, Stevens made a mortgage to the plaintiff of the machine-shop and land, including in express terms the boiler, and, for failure to comply with the conditions of the mortgage, the plaintiff foreclosed the same, and claims to hold the boiler by virtue of the mortgage and foreclosure.

On the ground inside of the engine-room of the shop was built a brick wall about eight feet high, separate from the outer wall of the building, and forming the two sides and one end of the casing surrounding the boiler. There was no front to the casing, except the iron-door front hereinafter mentioned. Over the top of this brick casing, plates of sheet-iron were laid, covered with gravel, resting there of their own weight and removable at pleasure. In one of these plates was an opening for a smoke-pipe, which was of sheet-iron, and also removable at pleasure.

Resting on the casing on the inside, about three feet above the ground, was an iron plate, not a part of the boiler, designed to support the weight of the sections of the boiler; midway between the front and rear, and connecting the sides of the casing, was a brick partition, built on the ground to within three inches of this plate, and designed to be the rear part of the fire-box. About eighteen inches above the ground, within the fire-box, resting on the casing, was a grate, not a part of the boiler. On the iron plate were placed the sections of the boiler. Each section weighed four hundred pounds, and occupied a space three and one third feet long, three feet high and four inches thick. Each section was a boiler in itself. By adding or removing these sections the size of the boiler could be increased or diminished. In case any one of the sections should become defective, it could be disconnected and taken out. The boiler in question consisted of eighteen sections, each of which rested on the iron plate of its own weight, without screws or attachments, and nowhere touched the sides or ends of the brick casing or the plates above. Water-pipes or nipples, connecting the sections of the boiler with a drum on the outside of the casing, passed through holes cut in the sides of the casing, and, by unscrewing these pipes or nipples, they might be removed singly or all together with the drum. Steam-pipes connected the sections and drum on the outside of the casing above the water-pipes, and were removable in the same manner.

The front of the casing consisted of an iron-door plate, which fitted against the ends of the casing, but was not in any way fastened to the casing, except that it was kept in place by means of iron bands passing around the sides and ends of the casing and through the door plate, and there held by nuts screwed on to the ends of the bands. By removing the nuts, this door plate became detached from the brick-work. By removing the steam and water pipes, the sections or boilers became disconnected and independent, and in no manner attached to the casing or anything appurtenent thereto, and could then be taken out separately through the top or the opening in front, without disturbing the brick-work.

It was contended by the defendant that the advantage of such

a sectional boiler was, that it was portable, and was designed so to be; that it could be put in, as well as taken out, without disturbing the brick-work. It was in evidence that it was frequently set up on standing frames; and that the boiler in this case was put in on trial, and Stevens intended that it should not become a fixture. The boiler, in connection with the steam-engine, shafting, pulleys, belts and machinery, was adapted to the machine-shop and business, and used, operated and employed by Stevens in his business as a machinist. It was connected with the engine by pipes such as are commonly used for that purpose, but in a manner not different from that in which any other portable boiler would be connected, and was relied upon to furnish the only motive power to operate the machinery in the shop.

The defendant's right to remove the boiler was admitted if it had not become a part of the realty.

Upon the foregoing facts, the defendant requested the judge to rule as follows: "1. The boiler was personal property, and the evidence would not justify the court in finding that it became part of the real estate. 2. If the boiler became a fixture, the agreement between Stevens and the defendant that it should remain personal property was binding on the plaintiff, a subsequent mortgagee. 3. If the plaintiff had notice of the defendant's title to the boiler previous to the delivery of the mortgage by Stevens, the plaintiff was estopped from contesting the defendant's right to remove the boiler."

The judge found as a fact that the plaintiff did not have notice of the defendant's claim to the boiler until after the mortgage deed was delivered; refused the rulings requested; found as a fact that the boiler became a part of the real estate and passed by the mortgage; and ordered a decree for the plaintiff, with costs. The defendant alleged exceptions.

*C. D. Adams*, for the defendant, cited *Tifft* v. *Horton*, 53 N. Y. 377; *Hill* v. *Sewald*, 53 Penn. St. 271; *Cochran* v. *Flint*, 57 N. H. 514.

*A. J. Bartholomew*, for the plaintiff, was not called upon.

MORTON, J. The rights of the parties in this case are determined by the rules as to fixtures which apply in cases between mortgagor and mortgagee.

The boiler, which the plaintiff contends was annexed to and became a part of the realty, was placed in the building, which was a machine-shop, by Stevens, the mortgagor, for the purpose of furnishing the motive power for the machinery. It was firmly attached to the land, was, in connection with the steam-engine, shafting and machinery, adapted to said machine-shop and business, and was essential to the enjoyment and use of the building, for the purpose for which it was intended. It therefore became a part of the realty, and passed to the plaintiff by its mortgage. *McLaughlin* v. *Nash*, 14 Allen, 136. *Pierce* v. *George*, 108 Mass. 78. *McConnell* v. *Blood*, 123 Mass. 47.

The fact that the sections of the boilers could be removed without disturbing the brick-work, by which it was supported and encased, is immaterial. The boiler as a whole had become a part of the realty. As stated in *McConnell* v. *Blood, ubi supra*, whatever is placed in a building by the mortgagor to carry out the obvious purpose for which it was erected, or to permanently increase its value for occupation, becomes part of the realty, though not so fastened that it cannot be removed without serious injury either to itself or to the building.

The defendant contends that the boiler did not become a fixture, because it was delivered to Stevens to be used on trial, with the agreement that it should remain the personal property of the defendant until it was paid for. Such agreement would prevent Stevens from claiming it as a part of the realty; it would also prevent any vendee or mortgagee who took with notice of the agreement.

But where, as in this case, personal property is sold for the purpose of being annexed to the realty, and it is so annexed, an agreement between the seller and the buyer that it shall not become a part of the realty, but shall remain the personal property of the seller, will not bind or affect a vendee or mortgagee without notice. Notwithstanding such agreement, the property will pass to such vendee or mortgagee as a part of the realty. *Hunt* v. *Bay State Iron Co.* 97 Mass. 279. *Thompson* v. *Vinton*, 121 Mass. 139. As it is found as a fact in this case that the plaintiff had no notice of the agreement between the defendant and Stevens until after the mortgage deed was de-

livered, it follows that its rights are not affected by that agreement.

For these reasons, we are of opinion that the justice who presided at the hearing was justified in his finding that the boiler became a part of the real estate and passed by the mortgage from Stevens to the plaintiff. *Exceptions overruled.*