## SMITH PAPER COMPANY *vs.* SARAH A. F. SERVIN.

Berkshire. Sept. 28, 1880. — April 5, 1881. COLT, MORTON & FIELD, JJ., absent.

A mortgagor of a factory, used for the manufacture of plate glass, placed therein an iron table, weighing thirty-three tons, resting on brick foundations, and adapted only for use in such a factory. *Held*, that, as between him and the mortgagee, it became part of the realty, although it could be removed without injury to the foundations on which it rested, or to itself.

A mortgagor of a factory placed therein a table under such circumstances that, as between him and A., the mortgagee, it became a part of the realty. Subsequently A. foreclosed the mortgage, and B., a second mortgagee of the real and personal estate, released to him all his interest in the property covered by the first mortgage. A dispute afterwards having arisen concerning certain property in the factory, A. and B. submitted the question concerning this property to arbitrators, the submission reciting that no question was made about the table, which was conceded to be the property of B. The submission and the award of the arbitrators were filed in court. B. subsequently, without the knowledge of A., sold the table to C., who suffered it to remain in the factory, under an agreement with persons using the factory by A.'s consent that it should remain his property. While the table was thus in the factory, A. sold the land to D., who had no actual knowledge of the statement contained in the submission to arbitration, but who was informed after he had paid for the land, and before he received his deed, that C. claimed to own the table, and the facts upon which his claim was based. *Held*, that the title to the table passed to D. as part of the realty.

TORT for the conversion of an iron table used in the manufacture of plate glass. Writ dated January 15, 1880. Answer: 1. A general denial. 2. That the defendant was the owner of a parcel of land with a factory thereon, to which the table was annexed as part of the realty.

Trial in the Superior Court, before *Rockwell*, J., who ruled that the plaintiff was entitled to maintain its action, directed a verdict accordingly, and reported the case for the determination of this court. If the ruling was correct, judgment was to be entered on the verdict; otherwise, the parties agreed that such entry was to be made as law and justice might require. The facts appear in the opinion.

*A. J. Waterman*, for the defendant.

*T. P. Pingree & E. T. Slocum*, for the plaintiff.

ENDICOTT, J. We can have no doubt that the table which is the subject matter of this suit became part of the realty when placed in the factory.

The factory was for the manufacture of rough plate glass. When the defendant took her deed of the premises, it contained two ovens, in which the plates of glass were tempered and annealed, and two furnaces used for melting in crucibles the substances of which the glass was made. The furnaces rested on solid mason-work, and on the right and left of each was an iron table and a crane. By means of these cranes the crucibles were lifted from their places, and the molten glass poured upon the tables between iron strips of the required thickness, and then rolled by a roller weighing five tons, operated by a hand winch. The plate glass was then removed to the ovens, where after cooling it was tempered and annealed, and then cut into sheets of the required size. No other permanent fixtures appear to have been required and used in the factory. These tables were necessary and essential for the manufacture of plate glass, and were not adapted to any other use, and it must be presumed that the owner in placing them there intended them to be permanent fixtures to be used in the factory. They rested on brick walls two or three feet high, built upon stone foundations firmly imbedded in the ground, which formed the floor of the factory. These tables seem to have varied somewhat in size; but the table in question was eighteen feet long, ten feet wide, nine inches thick, and weighed thirty-three tons. These iron tables thus became part of the structures supporting them and imbedded in the ground, all portions of which were necessary for their proper use. The fact that they rested by their own weight on the brick work, and could be removed without materially disturbing it, did not make them any less a part of the structures placed in the factory. The structures as a whole became a part of the realty.

The table in question was placed in its position before May 10, 1875, by the Lenox Glass Company, to whom the premises had been conveyed by the Lenox Plate Glass Company, subject to a mortgage given by that company to Theodore Roosevelt in 1868. This mortgage in terms included "all the machinery, tools, engines and furnaces now existing or hereafter to be placed, built or erected thereon or to be attached thereto," and was outstanding in May 1875. Three of these tables were in the factory when the mortgage was given to Roosevelt. It is

not now denied that they were covered by the mortgage as part of the realty; but it is denied that the table in question was covered by the mortgage.

Whatever is placed in a building subject to a mortgage, by a mortgagor or those claiming under him, to carry out the purpose for which it was erected, and permanently to increase its value for occupation or use, although it may be removed without injury to itself or the building, becomes part of the realty, as between mortgagor and mortgagee, and cannot be removed or otherwise disposed of while the mortgage is in force. *Winslow* v. *Merchants' Ins. Co.* 4 Met. 306. *Southbridge Savings Bank* v. *Exeter Works*, 127 Mass. 542. *McConnell* v. *Blood*, 123 Mass. 47. *McLaughlin* v. *Nash*, 14 Allen, 136. *Bainway* v. *Cobb*, 99 Mass. 457.

The Lenox Glass Company had made a mortgage of its real and personal property in 1872 to trustees, subject to the Roosevelt mortgage, and the report finds that, on May 10, 1875, these trustees legally conveyed all their interest therein to Wellington Smith. Roosevelt duly entered on the premises to foreclose his mortgage June 15, 1875; and, on the next day, Smith conveyed to Roosevelt all his right, title and interest in the lands and property, real and personal, described in the Roosevelt mortgage; and Roosevelt accepted the conveyance, "for the purpose among other purposes of merging the whole title in him," as stated in the report. In neither of these last-mentioned deeds is there any reservation of, or allusion to, the table in question, which had become part of the realty. The deed from Smith therefore vested in Roosevelt all the interest which he had in the premises, including this table. *Russell* v. *Smith*, 8 Pick. 143. Roosevelt therefore from this time was in possession of the premises, both under the deed from Smith and under his entry to foreclose his mortgage. Upon this record, there is no ground for saying, as matter of law, that the title to this table remained in Smith; on the contrary, all the title to the premises and fixtures, including this table, appears to have passed to Roosevelt.

After the title had thus become complete in Roosevelt, he entered into a written agreement with Andrew T. Servin and Robert G. Averill for the sale of all his right, title and interest

in the premises described in his mortgage; all the rights acquired by his entry to foreclose the same; and all rights acquired by him under the deed from Smith; and, by the terms of the agreement, Servin and Averill went into possession of the premises. This agreement was never performed by Servin and Averill. It was assigned by them to the Lenox Iron Works, as collateral security for advancements made, and by that company it was finally surrendered to the legal representatives of Roosevelt in January 1879, after his death.

While Servin and Averill were in possession, Smith claimed that the three iron tables which were on the premises when Roosevelt's mortgage was given were personal estate, and that they did not pass to Roosevelt by his deed, or by any other instrument, and that Servin and Averill had no right to the tables under their agreement with Roosevelt. And thereupon Roosevelt, Smith, and Servin and Averill entered into a written submission, and submitted the question to an arbitrator. The arbitrator decided that the three tables were a part of the realty, and made his award, which was duly filed in the Superior Court. The question whether the table, which is the subject of this controversy, was a part of the realty, was not submitted to the arbitrator; and in the statement of the demands of the parties, which is made part of the submission, after reciting that a question had arisen between them relative to their respective right, title and interest in the three tables, which they desire to adjust and determine by arbitration, this statement follows: "and to that end and purpose it is agreed, the new large iron table used in the Lenox Glass Company's factory is conceded to be the property of said Smith, and never was the property of said Roosevelt, and said Servin and Averill do not claim to hold or possess the said new large iron table by or under any contract or agreement with the said Theodore and James Roosevelt, or either of them, and the same is not covered, included in, or intended to be embraced by any contract existing between said Servin and Averill and said Roosevelts, or either of them, but all the other iron tables so used at said factory are the subject matter of this arbitration."

After the acceptance of the award, Smith, by an oral agreement, sold the table in controversy to the plaintiff, but without

moving it. The plaintiff then sold the same to Servin and Averill by an oral agreement for $5000, upon condition that it should be used for the purposes for which it was placed in the factory, and should remain the property of the plaintiff until paid for. Of these sales Roosevelt had no knowledge. Servin and Averill continued to use the table until July 1877, when Averill left, and Servin continued to use it alone till November 1878, when he ceased to do business. The table was never removed from the factory, and was seen upon the premises when examined by the defendant a short time before she purchased, in July 1879. The report finds that the plaintiff never entered into possession of the table in controversy before or after the surrender to Roosevelt's representatives of the agreement to convey to Servin and Averill, or gave any notice that it was theirs or that they had a claim upon it, until after she received her deed. Nor did the defendant have any actual notice of the submission to arbitration, and of the statement contained therein relative to the table in controversy, nor of the subsequent sales of the table before she received her deed. But the plaintiff contends that she had notice that the table did not belong to Roosevelt by reason of the record in the Superior Court, wherein it appears in substance that the table was personal property belonging to Smith, and not a part of the realty.

But, upon the facts here reported, we are of opinion that this question becomes entirely immaterial. Assuming, although there is no evidence of the fact, excepting the statement above referred to made in the submission, to the effect that the table belonged to Smith and was then personal property and not attached to the realty; and also assuming that Smith's title therein was legally conveyed to the plaintiff, and by the plaintiff conveyed to Servin and Averill, then in possession of the premises under an agreement from Roosevelt to convey; we are of opinion that the plaintiff cannot maintain this action against the defendant.

The plaintiff stands in the position of a person who sells personal property to be used as a permanent portion of the machinery employed in a factory, and which is necessarily annexed to the land in such manner as to become part of the realty. The fact that it was annexed to the land at the time

the plaintiff sold to Servin and Averill is immaterial, if all the parties treated it as personal property; and, giving the most favorable construction to the plaintiff's claim, the case stands as if the table was sold by the plaintiff to Servin and Averill, and by them annexed to the freehold in the manner described.

As between the plaintiff and Servin and Averill, the table would remain personal property; whether it would remain personal property as between the plaintiff and Roosevelt, the owner of the land, without notice of the sale, we need not now consider; but, as between the plaintiff and an innocent purchaser, claiming title under Roosevelt, who finds the table on the premises at the time of her purchase, the plaintiff has no right to it, for he has misled the purchaser by permitting the table to be attached to and made part of the realty purchased by her. Any permanent fixture attached to land by a party in possession under an agreement to convey becomes a part of the realty where the party fails to carry out his agreement. *Daggett* v. *Tracy*, 128 Mass. 167. And it cannot be contended that the table did not become a part of the freehold because it was delivered to Servin and Averill under an agreement that it should remain the personal property of the plaintiff until paid for; such an agreement might have prevented Servin and Averill from treating it as a part of the realty, but could not affect a purchaser who took the estate with no knowledge of the agreement. *Southbridge Savings Bank* v. *Exeter Works*, 127 Mass. 542. See *Dolliver* v. *Ela*, 128 Mass. 557. It becomes unnecessary therefore to consider many of the questions argued at the bar upon this part of the case.

The defendant purchased the premises of Roosevelt's representatives in July 1879, and entered into possession that month, after making her first payment. She made her final payment in September following, and nothing remained to be done but the execution of the deeds, which were finally delivered to her in November 1879. The fact that in October, after the purchase money was all paid, Servin informed the defendant's husband, who had acted for her in the purchase, that the plaintiff claimed title to this table, and stated the facts upon which the claim was based, cannot affect her rights.

The rulings at the trial, upon which judgment was entered for the plaintiff, were therefore erroneous; and, as the parties have agreed that this court may enter such judgment as law and justice require, the entry must be

*Judgment for the defendant.*