HENRY TRASK & another *vs.* JAMES C. LITTLE.

Suffolk.    March 17, 1902. — June 18, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, HAMMOND, & LORING, JJ.

*Landlord and Tenant.    Fixtures.*

A lessee built a platform on the demised premises and it was agreed between him
  and his lessor that the structure should remain the property of the lessee and
  that he should have the right to remove it "when he got out." Later the lessor
  refused to allow the removal and the lease terminated.    A new lessee took pos-
  session with no notice of the agreement and made various repairs and changes
  upon the platform.    In a suit in equity by the new tenant to restrain the former
  lessee from replevying the platform, it was *held*, that the character of the plat-
  form was such that it became a part of the realty as soon as it was erected, and,
  although the former lessee had the right to remove it at any time during his
  term and the lessor was liable to him in damages for refusing to allow him to
  do so, this did not affect the rights of the plaintiff who had taken his lease of
  the premises without notice of the agreement and that he was entitled to an
  injunction.

BILL IN EQUITY, filed May 1, 1901, to restrain the defendant from replevying or otherwise removing a certain platform alleged to be part of hotel premises in Revere leased to the plaintiffs by one Manning.

In the Superior Court the case was referred to Wilfred Bolster, Esquire, as master, who made the following findings: "1. The said platform is not a chattel, except as between the defendant and said Manning, and solely by reason of their consent that it should remain a chattel.    2. By reason of its method of annexation to the real estate and the inability of removal in such manner as to conserve its integrity and identity, said platform is not a trade fixture.    3. The agreement above referred to between the defendant and said Manning is not binding upon these plaintiffs.    4. The defendant ought to be restrained from removal of or interference with said platform during the term of the plaintiffs' lease."

The Superior Court overruled the defendant's exceptions to the master's report, and made a decree confirming it and granting the injunction prayed for.    The defendant appealed.

The description of the premises and platform in the master's

report was as follows: The premises, which included about ten thousand seven hundred square feet of land at Revere Beach, were bounded in the front on the Revere Beach Boulevard, in the rear on a street called Ocean Avenue, and on one side by Chester Avenue. Before the erection of the platform the half of the premises most distant from Chester Avenue was occupied by a hotel known as the Worcester House, a frame building of several stories with a stone foundation, and the remainder of the land was unoccupied. This unoccupied portion was at the rear, about eight feet lower than the level of the boulevard, and was on a level with Ocean Avenue. The land was filled in and sloped from the boulevard for a distance of about fifteen feet, and from Chester Avenue for varying distances to adapt it to the regular descent of Chester Avenue from the boulevard to Ocean Avenue. The unfilled or greater portion of. this lot was nearly level, and wet and boggy.

This platform was built as follows: Mud sills, so called, of six by six spruce lumber were laid horizontally on the ground parallel with the boulevard, at intervals of about five feet. These sills over the level portion of the lot were laid upon stones, and their vertical sides partly covered with earth and small stones to insure immobility, the tops remaining largely exposed. The sills ran laterally into the filling on the Chester Avenue side for varying distances up to about six feet. As the depth of filling from Chester Avenue increased toward the boulevard and ocean, the sills were laid at a greater height. The greatest vertical height of earth over the embedded sills was from two to three feet. At the front of the lot a line of about ten posts, supporting the platform, was driven into the filling. Upon the sills were erected posts of four by six spruce lumber, in length for the most part six feet six inches, and about two hundred and forty-four in number. The bottoms of these posts rested upon the tops of the sills, and were firmly nailed thereto, and a number of cross pieces were nailed thereto to obtain rigidity. To the tops of these uprights were nailed floor joists of two by six spruce, to which in turn was nailed the flooring of the platform comprised of two inch tongued and grooved spruce boards. The building of this platform effected much the same result as would have followed from raising nearly the en-

tire surface of the unoccupied lot almost to the boulevard level, in such way as to obtain a view therefrom over the beach and ocean from the further side. The only points of contact or joining of this platform structure with the hotel building were as follows: 1. At the rear corner of the hotel a cross brace nailed to the hotel supported and steadied at that point a tight board fence erected on the edge of the platform across its rear and part way along its sides. 2. The outward end of the top steps of a flight leading down from the platform between the platform and the hotel was supported by a cleat nailed to the outside of the hotel. 3. The platform level being about sixteen inches lower than the hotel veranda, a flight of two steps was built by the lessee, the bottom of which was securely nailed to the surface of the platform, and the top of which was less securely nailed to the veranda flooring. 4. A short diagonal piece of floor joist supporting the platform in part ran to and was spiked to a timber under the veranda, which formed a part of the hotel structure.

The defendant used this platform during the summer seasons of his occupancy for the operation of flying horses run by an engine placed in a small rear section of the platform.

*E. H. Savary*, for the defendant.

*F. N. Nay*, for the plaintiffs.

MORTON, J. The plaintiffs are lessees of a hotel known as the Worcester House in Revere. One Manning is the owner. Previous to and at the time of the lease to the plaintiffs the defendant had a lease of the premises. During his occupancy he built upon the demised premises the platform which is the subject of these proceedings. It was agreed between him and Manning that the structure should remain his property and that he should have the right to remove it "when he got out." The plaintiffs had no notice of this agreement. The defendant's lease expired by limitation on the first day of April, 1901. The plaintiffs' lease is for five years from that date. In December, 1900, Manning took possession of the premises including the platform. The reasons for this do not appear. In January, 1901, and on three occasions later, the defendant demanded of Manning and the persons in charge to be allowed to remove the platform but was refused permission to do so. Subsequently he

brought an action of tort against Manning which is pending in the Superior Court for Suffolk County. The plaintiffs entered under their lease about April 1, 1901, and took possession of the premises, including the platform, upon which they made various repairs and changes. The defendant has brought a writ of replevin against the plaintiffs for the platform, and this bill is for the purpose of restraining him from interfering with the platform. The case was sent to a master and comes here on exceptions to his report, and on appeal from the final decree overruling the exceptions and confirming the report, and restraining the defendant from moving or in any way interfering with the platform during the plaintiffs' lease.

We think that the character of the platform was such that as soon as erected it became a part of the realty and not a mere movable chattel. *Dodge* v. *Hall*, 168 Mass. 435, 441. *McIver* v. *Estabrook*, 134 Mass. 550. *Meagher* v. *Hayes*, 152 Mass. 228. Under the agreement between the defendant and Manning the former could remove it at any time during the term. If he was prevented by Manning from doing so he would have an action against Manning for any damages that he sustained thereby. *Ryder* v. *Faxon*, 171 Mass. 206. *Lewis* v. *Ocean Navigation & Pier Co.* 125 N. Y. 341. If the plaintiffs had taken their lease with notice of the agreement very likely they also would be liable to the defendant if they refused upon due demand to allow him to enter and remove the platform. But it is expressly found that they had no notice of the agreement, and we do not see why as between lessor and lessee as well as between grantor and grantee and mortgagor and mortgagee if a lessee takes without notice of the title of a prior lessee he should not hold the demised premises as against a prior lessee. *Meagher* v. *Hayes*, *ubi supra*. *Wentworth* v. *Woods Machine Co.* 163 Mass. 28. *Ridgeway Stove Co.* v. *Way*, 141 Mass. 557. *Southbridge Savings Bank* v. *Exeter Machine Works*, 127 Mass. 542.

The result is that we think that the decree should be affirmed.

*So ordered.*