FRANK FERDINAND *vs.* E. VINTON EARLE,

Suffolk.    October 17, 1921. — March 7, 1922.

Present: RUGG, C. J., CROSBY, CARROLL, & JENNEY, JJ.

*Real or Personal Property. Fixture. Mortgage,* Of real estate.

Upon one of two adjacent lots, owned by the same person, was a brick building consisting of stores and apartments, and that lot was subject to a mortgage. In this block the owner installed a heating plant adequate for heating the entire building. Afterwards he built upon the adjacent lot a garage with a party wall between the buildings, and, to heat it, installed in the basement of the first building a cast iron sectional steam boiler, four feet wide, five feet long, and five feet high and weighing from two and one half to three tons, set on the floor and not fastened to the building. In order to remove this boiler without damage to the building or to the boiler itself, removal would have to be by sections. It was connected with the garage by a six-inch main steam pipe and pipes and coils therein, and with one end of the brick building by a three-inch main or pipe, and connections easily could have been made between the coils in that part of the brick building and the main heating plant. While the main purpose of the owner in installing the boiler was to heat the garage, he used it as an auxiliary in heating between one seventh and one sixth of the brick building, one sixth of the heat for the boiler being used in that building. A judge, who without a jury heard an action of tort for conversion of the boiler brought by the original owner of both lots against one who had acquired title to the brick building containing the boiler through a sale in foreclosure of the mortgage thereon, having found the foregoing subsidiary facts, also found that the purpose of the plaintiff was not to make the boiler a part of the brick block property, but rather to promote the object for which the garage was erected, that the use to which the boiler was put in connection with the heating of the brick block was merely incidental and subsidiary to his main object, and that the plaintiff's intention in this respect was not secret and undisclosed but was reasonably to be inferred from the external and visible physical surroundings and conditions; refused to rule that the boiler was realty, and found for the plaintiff. *Held,* that

(1) The intention of the plaintiff as to the boiler could not be determined by his undisclosed purpose but was to be ascertained from his acts and the inferences to be drawn from what was external and visible;

(2) The fact, that the boiler could be removed from the brick building, was immaterial;

(3) The rational inference to be drawn as to the intention of the plaintiff as manifested by his acts was that he intended that the boiler, when placed in the brick block, with its connections would become a part of the building;

(4) Upon the subsidiary findings made by the judge, it could not properly be found that the plaintiff did not intend to make the boiler a part of the block property;

(5) The boiler was realty and the action could not be maintained.

TORT, for the conversion of one Richmond boiler with fittings. Writ dated January 16, 1920.

In the Superior Court, the action was heard by *McLaughlin*, J., without a jury. Material evidence and findings by the judge are described in the opinion. The defendant requested, among other rulings, the following:

"2. Heavy articles though not fastened down are fixtures if put in with the intention of not removing them and trover cannot be maintained by the owner of the equity against a mortgagee who has foreclosed even if the mortgage was prior to the putting in of the fixtures. The boiler in this case was realty and trover for conversion does not lie."

The judge gave the foregoing ruling, except the last sentence, and found for the plaintiff in the sum of $637.40; and the defendant alleged exceptions.

*W. M. Blatt*, for the defendant.

*K. C. Parker*, for the plaintiff.

CROSBY, J. This is an action of tort to recover the value of a steam boiler. The plaintiff acquired title by separate instruments to two adjacent lots of land. One of the lots was vacant; there was a brick block consisting of stores and apartments on the other which was subject to a mortgage. The plaintiff installed in the brick block a heating plant which was adequate and sufficient for heating the entire building; afterwards he built a garage on the adjoining lot with a party wall between the buildings. For the purpose of heating the garage he installed in the basement of the block the boiler in question; it was a cast iron sectional steam boiler, four feet wide, five feet long, and five feet high, weighing from two and one half to three tons, and of a standard type. It was set on the floor and was not fastened to the building, although there was grouting around the base to protect it from water which might be in the cellar. As it was sectional it could be taken apart and its removal would cause no damage to the building or to the boiler itself, but it could not be removed except by sections; it was connected with the garage by a six-inch main steam pipe and pipes and coils therein, and with the west end of the brick block by a three-inch main or pipe.

The case was heard by a judge of the Superior Court without a jury. He found that, while the purpose of the plaintiff in install-

ing the boiler was to heat the garage, "he availed himself of the opportunity to use the additional boiler as an auxiliary in heating this part of the building, which consisted of an area of about two thousand eight hundred and five square feet of surface, the total area of the building being about seventeen thousand eight hundred and thirty-seven square feet . . . that the heating plant installed for the benefit of the block property, was connected with the west end of the building as well as with all the other parts, and connections could easily have been made between the coils in that portion of the building and the main heating plant. Of the heat furnished by the boiler in question, sixteen and two thirds per cent was supplied to the block, and eighty-three and one third per cent, the remainder, to the garage." After the installation of the boiler the mortgage was foreclosed. The defendant, either by purchase at the foreclosure sale or through mesne conveyances, became the owner of the premises referred to as the block property, and the plaintiff continued to own the adjoining lot with the garage thereon.

The question is, whether upon the foregoing facts the boiler was a fixture and a part of the real estate or was personal property which the plaintiff could remove. The trial judge found that the purpose of the plaintiff was not to make the boiler a part of the block property, but rather to promote the object for which the garage was erected; and that the use to which the boiler was put in connection with the heating of the block was merely incidental and subsidiary to his main object. He also found that the plaintiff's intention in this respect was not secret and undisclosed but was reasonably to be inferred from the external and visible physical surroundings and conditions. These findings are conclusive and determine the rights of the parties, unless erroneous as matter of law.

Generally the question whether an article placed in a factory, dwelling house or other building belongs to the real estate is a mixed question of law and fact. "But the principal facts, when stated, are often such as will permit no other presumption than one of law. It is obvious that in most cases there is no single criterion by which we can decide the question. The nature of the article, and the object, the effect, and the mode of its annexation, are all to be considered. In this Commonwealth it has been said that

'whatever is placed in a building subject to a mortgage, by a mortgagor or those claiming under him, to carry out the purpose for which it was erected, and permanently to increase its value for occupation or use, although it may be removed without injury to itself or the building, becomes part of the realty.'" *Hopewell Mills* v. *Taunton Savings Bank,* 150 Mass. 519, 522, 523. *Southbridge Savings Bank* v. *Mason,* 147 Mass. 500. *Hook* v. *Bolton,* 199 Mass. 244. The defendant claims title under the foreclosure of the mortgage of the real estate. When he purchased the block property he had no knowledge of any claim to the boiler by the plaintiff. Although the judge found that the purpose of the latter was not to make the boiler a part of the block property but to promote the object for which the garage was erected, that intention cannot be determined by his undisclosed purpose but is to be ascertained from his acts and the inferences to be drawn from what was external and visible. While the question is not free from difficulty we are of opinion that upon the findings and the reasonable inferences to be drawn therefrom the boiler was a part of the realty.

It weighed from two and one half to three tons, rested on the floor of the boiler room and was connected by steam pipes to radiators and coils in both buildings. It was installed for the purpose not only of heating the garage but also of heating a substantial portion of the block, was used as an auxiliary in heating the west end of the block and was essential to the enjoyment and use of such part of the building in its condition as it existed when the boiler was installed; and this is true notwithstanding the fact that the heating apparatus already there would have been suitable and sufficient to heat the whole building if connections had been made between the coils in that portion and the main heating plant. Although the garage and brick block were erected at different times, they were both owned by the plaintiff and were separated by a party wall only. The boiler was installed for the purpose of heating not the garage alone, but also the stores and apartments in the west end of the block. Obviously one of the reasons for its installation was to carry out the purpose for which the block was erected, namely, to furnish heat in the stores and apartments in the west end of the building; and it is manifest that it permanently increased the value of that part of the block for occupancy. These

circumstances, when considered together with the great weight of the boiler and its connections not only with radiators in both buildings but with water pipes and other appliances necessary for the operation of a steam boiler of the type in question, show that it became a part of the realty and passed to the defendant.

It is stated in *Southbridge Savings Bank* v. *Exeter Machine Works,* 127 Mass. 542, at page 545: "The fact that the sections of the boilers could be removed without disturbing the brick-work, by which it was supported and encased, is immaterial. The boiler as a whole had become a part of the realty." *McConnell* v. *Blood,* 123 Mass. 47. *Smith Paper Co.* v. *Servin,* 130 Mass. 511, 513.

The rational inference to be drawn as to the intention of the owner as manifested by his acts is that he intended that the boiler would, when placed in the brick block, with its connections become a part of the building. Upon the subsidiary findings made by the judge, it could not properly be found that the plaintiff did not intend to make the boiler a part of the block property. *Stone* v. *Livingston,* 222 Mass. 192, and other cases cited and relied on by the plaintiff, are distinguishable in their facts from those in the case at bar.

It follows that the defendant's second request should have been given. The entry must be

> *Exceptions sustained.*
> *Judgment for the defendant.*