JOSEPH MENARD, executor, *vs.* POLYCARPE L. COURCHAINE & others.

Bristol.    December 1, 1931. — December 28, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & FIELD, JJ.

*Real or Personal Property.    Mortgage,* Of real estate.    *Sale,* Conditional.

In a suit in equity by a mortgagee of land and an ice house thereon adjacent to a pond against the mortgagor and one who by a contract of conditional sale sold to him an ice hoist, sheds and belting housing connected therewith, which the vendor attached to the ice house by means of hooks, lag screws or bolts, without the use of nails, to take the place of similar equipment which had been attached to the ice house when the plaintiff received his mortgage, rulings of law that such equipment became a part of the land as between the mortgagee and the vendor and that the vendor, upon default under the contract of conditional sale, was not entitled to remove such fixtures as against the mortgagee, were proper.

BILL IN EQUITY, filed in the Superior Court on January 6, 1930, with a common law writ dated December 5, 1929. The prayers of the bill were as follows:

"1. That the amount of the plaintiff's claim under his second mortgage be determined.

"2. That the claim, if any, of the defendant Croteau against the defendant Cadorette be determined.

"3. That the damage caused by the illegal conduct of the defendant Courchaine be determined.

"4. That the defendant Courchaine be ordered to make such payment to the plaintiff for his damages as justice and equity may require."

There also was a prayer for general relief. The answer of the defendant Croteau admitted each allegation of the bill.

The suit was referred to a master. Material facts found by the master are stated in the opinion. A motion to confirm the report was allowed by *Broadhurst,* J. Rulings by the judge and a final decree entered by his order are stated in the opinion. He also ruled as follows: "The answer filed by the defendant Croteau is a brief and simple admission of everything alleged by the plaintiff in his bill, but does not claim any rights against either of the other defendants. No motion has been made by the defendant Croteau, who has counsel of record, to amend his answer by inserting therein any claim against either of the other defendants. See Equity Rule 6. In this state of the pleadings I rule that the defendant Croteau is not entitled to any part of the damages found to be payable by the defendant Courchaine."

The defendant Courchaine appealed from the rulings and the final decree.

The case was submitted on briefs.

*D. Silverstein,* for the defendant Courchaine.

*O. Laplante & A. E. Seagrave,* for the plaintiff.

CROSBY, J. This suit in equity is brought by the executor of the will of Virginie Bedard. Before November 23, 1929, the defendant Cadorette was the owner of certain real estate bordering on a pond in Fall River upon which was situated an ice house, and connected therewith was an ice hoist or ice run which extended from the ice house to the pond. Certain sheds were also on the premises which covered the stationary engines used in connection with the plant. There was a first mortgage on the property held by the defendant Croteau, and a second mortgage held by the plaintiff's testatrix.

The case was referred to a master who found the following facts: On or about January 25, 1928, by reason of a storm, the ice hoist and sheds attached thereto were blown down and completely destroyed. On the same day Cadorette and the defendant Courchaine (who will hereafter be referred to as the defendant) entered into an agreement, in writing, for the erection of a new ice hoist and sheds pertaining thereto and belting housing connected therewith, by which these structures were to remain the personal property of the defendant until paid for. An oral agreement between these parties made at the same time need not be referred to. Thereafter the defendant constructed the hoist, sheds and housing, and connected the apparatus to the ice house by means of hooks, lag screws or bolts, using no nails for this purpose. On or about November 12, 1929, the defendant went upon the mortgaged premises and removed therefrom the structures he had erected and affixed to the ice house, claiming that he had a right to do so because of a breach of the agreement between himself and the mortgagor that the hoist and equipment should remain personal property until paid for. On November 14, 1929, the plaintiff, in writing, notified the defendant that he claimed the structures under his mortgage and would hold him liable for all damages caused by such removal. The plaintiff made an entry upon the premises under the mortgage held by him for the purpose of foreclosing the same, and a certificate thereof was filed in the registry of deeds on November 14, 1929. He later commenced foreclosure proceedings which were discontinued at the request of the defendant and by reason of the institution of proceedings begun by the defendant Croteau to foreclose the first mortgage, under which the premises were sold on November 23, 1929, to one Oulette. The master found that the first and second mortgagees acted independently and in good faith; that before the foreclosure sale the defendant told the plaintiff and Croteau that he claimed the hoist as his personal property, but that at the time of its erection neither mortgagee was notified of such claim; that the difference in value of the ice house on November 12, 1929, before the

removal of the hoist, sheds and appliances connected there-
with, and on November 23, 1929, the date of the foreclosure
sale, without the hoist and other appliances which had been
removed was $2,700.

Upon the facts found by the master the trial judge ruled,
in substance, that the ice hoist, sheds and housing built by
the defendant became a part of the real estate, and were
subject to the outstanding mortgages; that in removing
the structures the defendant acted in violation of the rights
of the mortgagees and impaired the value of the security
under the mortgages in the sum of $2,700. The judge
further ruled that in view of the pleadings the defendant
Croteau was not entitled to any part of the damages found
to be payable by the defendant Courchaine. A final decree
was entered, the third paragraph of which ordered that the
defendant Courchaine forthwith pay the plaintiff as dam-
ages the sum of $2,700 with interest from the date of the
filing of the bill, amounting to the date of the decree to
$2,752.20; the fifth paragraph ordered that the plaintiff
have one bill of costs against the defendants Cadorette
and Courchaine in the sum of $28.45, and that execution
issue therefor. From this decree the defendant Courchaine
appealed.

The only question presented by this appeal is whether the
defendant had a right to remove the ice hoist and sheds under
the alleged agreement with Cadorette, or whether the struc-
tures became a part of the real estate and were covered by
the mortgages thereon above referred to. As the evidence
is not reported, the findings of the master must stand. The
defendant's contention is that he was a tenant at will of the
premises and ice house when he erected the ice hoist and
housing attached thereto until February 5, 1929, at which
time a lease was executed to him by the owner for ten months,
and thereafter to the date of the removal of the hoist he was
a tenant under the lease which did not expire until December
5, 1929; that by reason of the manner in which the hoist and
fixtures were attached no physical damage was done to the
ice house itself, and that the fixtures so removed were per-
sonal property which he was entitled to remove by virtue

of his agreement with the mortgagor. Although the hoist, sheds and housing were attached to the ice house by means of hooks, lag screws or bolts, and no nails were used for that purpose, it does not follow that such attachments thereafter were personal property. It is obvious that the ice house could not be used for the storage of ice without the hoist or ice run and the other fixtures which were removed by the defendant. They were component parts of the ice house, and it is necessarily to be inferred that they were to be used in connection with it. Although they could be removed without injury to the ice house, they were necessary to carry out the purpose for which it was erected and increased its value for use. They became a part of the realty as between the mortgagor and a mortgagee and could not be removed as against a mortgagee. *Cole* v. *Stewart,* 11 Cush. 181. It was said in *Smith Paper Co.* v. *Servin,* 130 Mass. 511, at page 513: "Whatever is placed in a building subject to a mortgage, by a mortgagor or those claiming under him, to carry out the purpose for which it was erected, and permanently to increase its value for occupation or use, although it may be removed without injury to itself or the building, becomes a part of the realty, as between mortgagor and mortgagee, and cannot be removed or otherwise disposed of while the mortgage is in force." *Guernsey* v. *Wilson,* 134 Mass. 482. *Hopewell Mills* v. *Taunton Savings Bank,* 150 Mass. 519. *Ferdinand* v. *Earle,* 241 Mass. 92. The rights of the mortgagee in the mortgaged property could not be affected by any agreement in regard to it to which he was not a party, nor by notice of the defendant's claim. *Meagher* v. *Hayes,* 152 Mass. 228. The question, whether an article placed in or attached to a building thereby becomes part of the realty, usually is a mixed question of law and fact. *Ferdinand* v. *Earle,* 241 Mass. 92, 94, and cases collected at page 95. In determining the question whether the hoist, sheds and other equipment became real estate when attached to the ice house, the mode of annexation, the nature of the article, its value for use, and the intention of the parties as shown by their acts are important to be considered. *Ferdinand* v. *Earle,* 241 Mass. 92, 94, 96. *Commercial Credit Corp.* v. *Common-*

*wealth Mortgage & Loan Co. Inc.* 276 Mass. 335, 338. Upon the facts found the ice house, shed and housing upon annexation to the ice house became a part of the realty, and could not lawfully be removed by the defendant as against the rights of the plaintiff as mortgagee. The final decree is to be affirmed with costs.

*Ordered accordingly.*