GENERAL HEAT AND APPLIANCE COMPANY *vs.* GEORGE E. GOODWIN & others.

Suffolk. February 1, 1944. — April 26, 1944.

Present: FIELD, C.J., QUA, RONAN, & WILKINS, JJ.

*Mortgage,* Of real estate: what property covered, personalty attached to mortgaged premises, heating apparatus. *Sale,* Conditional. *Real Property,* Attachment of personalty, Heating apparatus. *Personal Property,* Attachment to real estate, Heating apparatus. *Real or Personal Property. Equity Pleading and Practice,* Decree, Inferences, Appeal.

In a suit in equity by the vendor in a conditional sale of heating apparatus in a building against the vendee and one who had become the owner of the building through purchase at a sale in foreclosure of a mortgage, an "interlocutory decree" establishing the vendee's indebtedness to the vendor, the title of the vendor to the apparatus, and his right to repossess and resell it if such indebtedness were not paid within a specified time, was a final decree as against the defendant owner, although it also contained provisions contemplating the possibility of further decrees in the event of a resale by the vendor.

On appeal in a suit in equity heard on a statement of agreed facts, this court draws the proper inferences from such facts without regard to inferences drawn by the trial judge.

On facts showing in detail the nature of a compact, standard type combination oil burner and air conditioner and the method of its installa-

tion in a dwelling house as the central and only heating apparatus thereof, the proper inference was that, as between one who sold the apparatus to the owner of the premises on conditional sale and a prior mortgagee of the premises, the apparatus became part of the realty although it was capable of being easily removed therefrom without injury to itself or the premises and of being used in other dwellings; and the vendor, as against the mortgagee, was not entitled to repossess the apparatus upon default by the vendee.

BILL IN EQUITY, filed in the Superior Court on February 27, 1942.

The case was heard by *Spalding*, J. In this court it was submitted on briefs.

*J. F. Connolly*, for the defendant Hyde.

*E. L. Schwartz*, for the plaintiff.

WILKINS, J. This is a suit in equity under G. L. (Ter. Ed.) c. 214, § 3 (1), by a vendor to compel the redelivery of a "Delco-Heat Conditionair" sold and delivered under a contract of conditional sale to the defendant Goodwin at his residence at 16 Radford Lane, Dorchester, and to recover damages. Other parties defendant are the Merchants Cooperative Bank, holder of a first mortgage on the premises, and one Hyde, present owner through the foreclosure by sale of a second mortgage of which he had been the assignee. The defendant Goodwin defaulted, and the bill of complaint was taken pro confesso as against him. The case was tried before a judge on a statement of agreed facts, and from an "interlocutory decree" the defendant Hyde appealed.

The plaintiff has filed a motion that the appeal be dismissed as prematurely entered. This motion must be denied. The decree declared that the plaintiff had title to the "Conditionair" and was entitled to possession; established the indebtedness of Goodwin to the plaintiff; provided that upon payment within twenty-one days the plaintiff should give to Goodwin a bill of sale, or, in the alternative, that if payment were not made, Goodwin should deliver to the plaintiff, or permit the plaintiff to repossess, the "Conditionair," without waiver of the indebtedness, and with the right of resale; made an order, not affecting Hyde, for a small payment by the plaintiff to the bank in the event of repossession; set forth that none of the defendants was entitled

to damages against the plaintiff; "perpetually restrained and enjoined" all defendants from removing, encumbering, or disposing of the "Conditionair" and from interfering with its removal by the plaintiff so long as the indebtedness remained unsatisfied; required the plaintiff, upon making a sale under § 13F, inserted in G. L. (Ter. Ed.) c. 255 by St. 1939, c. 509, § 2, to file a report in court; and continued the suit "for such further decrees as may be necessary in the premises."

The decree, although contemplating the possibility of supplemental decrees in the event that a sale should be made, conclusively determined the matters in issue. By it Hyde was deprived, in favor of the plaintiff, of his asserted title and possession, subject only to a condition subsequent, which might relieve him from the consequences of failure in the controversy, in the contingency of payment of the indebtedness to the plaintiff by Goodwin, who had never been an active participant in the litigation. The bank, which did not contend that the "Conditionair" was covered by the first mortgage, had merely sought an order for restoration of the premises should the plaintiff succeed in the prayer for its return. The decree, in spite of its title, was a final decree, and the appeal is rightly before us. *Kingsley* v. *Fall River*, 280 Mass. 395, 399–400. *Commissioner of Insurance* v. *Broad Street Mutual Casualty Ins. Co.* 306 Mass. 362, 364–365. *Seder* v. *Kozlowski*, 311 Mass. 30, 33.

The statement of agreed facts shows the course of events to have been as follows: On March 14, 1941, Goodwin executed a second mortgage of the real estate to one Rogers. The mortgage, recorded on the same day, covered, "Also, insofar as the same are, or can by agreement of the parties be made, a part of the realty, all of the following articles now or hereafter on the above described premises or used therewith: — plumbing, heating, — ventilating and air conditioning apparatus and equipment, — motors — , and other fixtures whether or not included in the foregoing enumeration." On March 20 the plaintiff by a conditional sale contract sold to Goodwin the "Conditionair," which immediately thereafter was placed in the basement and apparently

constituted the only means of heating the house. The contract, no notice of which was recorded, provided for payment of $860.76 in thirty-six monthly instalments and contained the following: "It is understood and agreed that title to said property . . . shall not pass to the buyer until the total purchase price with interest . . . shall have been fully paid . . . [and] said property shall remain personal property and shall not become a part of the realty; that the buyer shall keep said property free from all liens, taxes and incumbrances and will not, without the written consent of the seller, mortgage, pledge, sell or in any other wise dispose of said property or any part thereof, or the buyer's interest therein . . .. In the event of the failure of the buyer to pay any of said installments when due, . . . at the time and in the manner herein specified (time being of the essence of this contract); then . . . the seller may, at its option, declare the entire balance of the unpaid purchase price at once due and payable . . . and thereupon the seller may take immediate possession of said property, including all equipment, attachments and accessories thereon . . .." On June 25 Rogers assigned his mortgage to Hyde. This assignment was recorded on June 26. On October 22 Hyde made a peaceable entry, and thereafter foreclosed by sale at public auction, and bought in subject to the first mortgage and taxes. The foreclosure deed was duly recorded. On January 27, 1942, Hyde for the first time learned of the conditional sale contract, no payments under which had been made.

The premises, a wooden framed, seven room, single family dwelling house about forty years old, were originally designed for hot air heat. There were ducts for the transmission of air leading from a hot air furnace along the basement ceiling, to which they were fastened by screws and bolts or suspended by wire loops, and thence continuing up through the walls and opening out into registers and grilles. The furnace, originally a coal burner, had been converted to an oil burner. The premises could be heated by any mechanism which heated and circulated air.

The "Conditionair" was a combination oil burner and winter air conditioner, wholly contained in a thin walled

metal cabinet.  It was a patented, standard type, one of a series of models of oil burners manufactured by General Motors Sales Corporation, and was a compact unit thirty by fifty-three by forty-five inches weighing seven hundred thirty pounds, capable of being disassembled into easily handled parts and removed without injury to itself or the real estate through doors or existing openings in the building.  It consisted in part of a heating transfer unit in three parts, twin side chambers, placed on either side of a central combustion chamber, which contains a heat transmitter; as well as a burner, a small fan, a small motor, a humidifier, ducts, and two plenum chambers.  The "Conditionair" was taken from stock and not peculiarly designed for, or adapted to, the premises.  It could be easily taken to any other dwelling, where it would operate upon assembly and connection with the electricity, oil, and duct works.  If removed, its value would be unchanged.

Before installing the "Conditionair" the plaintiff removed the furnace, oil burner, and basement duct works, and placed them in the yard at a point designated by Goodwin.  The plaintiff then ran new ducts of thin sheet metal along the basement ceiling fastened by small screws.  These ducts were connected at one end to the existing ducts and at the other end to a plenum chamber.  A cold air return and an additional register were cut in the floors, which could be restored to their former condition at a cost of $91.50.  The "Conditionair" itself was assembled by connecting the central combustion chamber with the heat transfer unit, and placed so as to rest by its own weight upon an angle iron frame which in turn rested upon the floor.  Thin sheets of metal were put in to act as a partition between the heat transfer unit and the air intake section, in which were placed the fan or blower and a motor, which were then connected by a belt.  The whole was then encased in four sheets of metal fastened by nuts and bolts.  A filter tray was placed in the air intake section, and a humidifying pan in the other section.  The "Conditionair" was then ready to be connected with the oil, the electricity, and the ducts.  The air connection was effected through a metal plenum chamber, sub-

divided into air outlet and air intake chambers, which is suspended from the ceiling by screws. The chamber reached to within one and one half inches of the "Conditionair," the intervening space being occupied by strips of asbestos cloth fastened by small screws. The oil burner, which was about fifteen inches high and rested on an arm jutting out from the central combustion chamber, was connected by means of three nuts and wires encased in a tubing. The burner at no point touched the floor. It was connected to the oil tank by a copper tubing screwed at each end. The fan, or blower, and the motor, which rested on the angle iron frame solely by their own weight, were connected by a wire to the electricity. The plaintiff does not seek the return of the plenum chambers or the basement duct work.

On appeal in equity from a final decree heard upon a statement of agreed facts this court may draw the proper inferences, whatever may have been the inferences drawn by the court below. *Stuart* v. *Sargent*, 283 Mass. 536, 541. *Converse* v. *Boston Safe Deposit & Trust Co.* 315 Mass. 544.

As between the mortgagee and the conditional vendor, the "Conditionair" may be found either to have become realty or to have remained personalty, depending upon what our cases call the intention of the landowner, as shown by his acts, when it was installed on the mortgaged land. *Gardner* v. *Buckley & Scott, Inc.* 280 Mass. 106, 111. *Titcomb* v. *Carroll*, 287 Mass. 131, 135–136. Such intention "is to be determined upon consideration of all the circumstances, including therein the adaptation to the end sought to be accomplished and the means, form and degree of annexation." *Stone* v. *Livingston*, 222 Mass. 192, 195. The physical facts being established, the additional determination as to intention is a mixed question of law and of fact — principally of fact. *Hannah* v. *Frawley*, 285 Mass. 28, and cases cited at page 30. It "cannot be determined by . . . [the landowner's] undisclosed purpose but is to be ascertained from his acts and the inferences to be drawn from what was external and visible." *Ferdinand* v. *Earle*, 241 Mass. 92, 95. See *Hopewell Mills* v. *Taunton Savings Bank*, 150 Mass. 519, 522; *Medford Trust Co.* v. *Priggen Steel Garage Co.* 273

Mass. 349, 353. "Whatever is placed in a building subject to a mortgage, by a mortgagor or those claiming under him, to carry out the purpose for which it was erected, and permanently to increase its value for occupation or use, although it may be removed without injury to itself or the building, becomes part of the realty, as between mortgagor and mortgagee, and cannot be removed or otherwise disposed of while the mortgage is in force." *Smith Paper Co.* v. *Servin,* 130 Mass. 511, 513, and cases cited. *Menard* v. *Courchaine,* 278 Mass. 7, 11.

The question to be decided is whether a central heating plant placed in a dwelling house, as in the case at bar, falls within this principle. The trial judge was of opinion that it does not. Our conclusion is that it does. We think that anyone who saw the house would at once conclude that the "Conditionair" was part of it. The association between the "Conditionair" and the real estate was expected to be permanent. The "Conditionair" was "necessary to the completeness of the dwelling-house" (*Bainway* v. *Cobb,* 99 Mass. 457, 458), and was "essential to the enjoyment and use" (*Ridgeway Stove Co.* v. *Way,* 141 Mass. 557, 560) of the building as a place of abode. "The central heating plant of a dwelling house is not a piece of furniture. Successive tenants do not bring it with them when they become occupants, nor take it away with them when they cease to occupy the dwelling. It remains and, in the ordinary course of events, performs its function of heating until it wears out or is otherwise rendered inefficient or useless. It relates to the building itself. . . . Its presence has a distinct relation to the value of the premises for the purpose of sale or mortgage." *Gar Wood Industries, Inc.* v. *Colonial Homes, Inc.* 305 Mass. 41, 50. While weight may be given to the fact that the objects were sold under a contract of conditional sale, this is not conclusive. *Commercial Credit Corp.* v. *Commonwealth Mortgage & Loan Co. Inc.* 276 Mass. 335, 339. If the articles "were found to be parts of the realty, an agreement that they should be treated as personalty or that title thereto should remain in the vendor would not bind a prior nonassenting mortgagee." *Medford Trust Co.*

v. *Priggen Steel Garage Co.* 273 Mass. 349, 354–355. See *Hopewell Mills* v. *Taunton Savings Bank*, 150 Mass. 519, 521.

Cases are distinguishable where the action was at law and the question was whether there was evidence warranting a finding as to intent, or where in a suit in equity a finding as to intent was not inconsistent with subsidiary facts found nor shown to be plainly wrong on the reported evidence. See, for example, *Gardner* v. *Buckley & Scott, Inc.* 280 Mass. 106; *Sacks* v. *McKane*, 281 Mass. 11, 21; *Standard Plumbing Supply Co.* v. *Gulesian*, 297 Mass. 214; *Morrison* v. *Segal*, 270 Mass. 292; *Medford Trust Co.* v. *Priggen Steel Garage Co.* 273 Mass. 349; *Waverley Co-operative Bank* v. *Haner*, 273 Mass. 477; *Greene* v. *Lampert*, 274 Mass. 386; *Commercial Credit Corp.* v. *Gould*, 275 Mass. 48; *Stiebel* v. *Beaudette & Graham Co.* 275 Mass. 108; *Commercial Credit Corp.* v. *Commonwealth Mortgage & Loan Co. Inc.* 276 Mass. 335; *Menard* v. *Courchaine*, 278 Mass. 7, 11–12; *Walker Dishwasher Corp.* v. *Medford Trust Co.* 279 Mass. 33; *Lawyers Mortgage Investment Corp. of Boston* v. *Paramount Laundries Inc.* 279 Mass. 314; *Hannah* v. *Frawley*, 285 Mass. 28; *Titcomb* v. *Carroll*, 287 Mass. 131; *Grinnell Co. Inc.* v. *Gardner Trust Co.* 288 Mass. 385.

Since Hyde is entitled to prevail at common law, it is unnecessary to consider whether under G. L. (Ter. Ed.) c. 184, § 13, failure to record notice of the conditional sale contract renders it invalid as against a subsequent assignee of a prior mortgage.

The result is that the conditional seller is not entitled to prevail as against Hyde, and the decree must be modified by dismissing the bill as to Hyde with costs of this appeal and by making such changes in the wording of the decree as are made necessary by this disposition. As so modified the decree is affirmed.

*Ordered accordingly.*