CITY OF CHELSEA *vs*. RICHARD T. GREEN COMPANY.

Suffolk.    January 7, 1946. — February 1, 1946.

Present: QUA, DOLAN, RONAN, & WILKINS, JJ.

*Real or Personal Property. Taxation,* Real estate tax: assessment. *Marine Railway. Real Property,* Marine railway.

Upon detailed findings as to a large and very heavy marine railway cradle which, although susceptible of removal, had been constructed to go with the particular foundation and track on which it was located, and as to heavy machinery installed on a substantial foundation and used to pull the cradle up the track, the cradle and the machinery each forming an essential part of one permanent marine railway installation, both were properly ruled to be part of the real estate for the purpose of the assessment of local taxes under G. L. (Ter. Ed.) c. 59.

PETITION, filed in the Land Court on April 29, 1940.

The case was heard by *Fenton*, J.

*G. K. Gardner*, for the respondent.

*J. F. Sullivan*, for the petitioner.

QUA, J. This is a petition filed in the Land Court for foreclosure of the city's tax title to land of the respondent. The respondent contended at the trial that the city's lien was invalid on the ground that the assessments (which were for the years 1932–1938) on the parcel in question included with the land the cradle and motivating machinery of a marine railway located on the parcel, and that these were personal property. The Land Court made findings of fact and ruled that the disputed items were part of the real estate and that the assessments and the lien were valid. The respondent appeals.

It is not, and could not be, denied that real estate and personal property must be separately assessed; that there is no lien for taxes upon personal property; and that if the disputed items were personal property the city has no lien upon the premises. G. L. (Ter. Ed.) c. 59, §§ 3, 4, 45, 46; c. 60, § 37. *Hamilton Manuf. Co.* v. *Lowell*, 185 Mass. 114. *McGee* v. *Salem*, 149 Mass. 238, 242. *Curtiss* v. *Sheffield*, 213 Mass. 239, 242. See *Phelps* v. *Creed*, 231 Mass. 228, 232; *Collector of Taxes of Boston* v. *Revere Building, Inc.* 276 Mass. 576, 578. It was agreed that the assessments treated as real estate the marine railway, including the cradle and the hoisting machinery. The correctness of the decision of the Land Court therefore depends upon both the cradle and the machinery being real estate.

Other facts pertinent to this issue agreed or found at the trial are stated by the Land Court in its decision as follows: "It was further agreed that the marine railway consisted of a foundation, a track structure, a cradle, and hoisting machinery. The foundation upon which the track rests is constructed of wood and rests on piling which was driven and cut for the required slope. The cradle itself is two hundred thirty feet long and, including the stone ballast, weighs approximately five hundred and thirty tons. It could safely carry two thousand tons. The hoisting machinery, contained in a building, and consisting of a winch and steam engine, is set on bolts and secured by nuts. The bolts range in length from five to six feet and are fastened to a wood foundation. The marine railway contains all the essentials of a drydock. The cradle travels up and down the inclined railway. The upper end of the track is above water, and the lower end is in considerable depth of water, so that when the cradle is all the way down, a ship can be floated onto it, and then the cradle can be pulled up the incline, bringing the ship with it. The incline of the marine railway is at a grade of one to twelve, this incline having been found adaptable for the particular location. The cradle is not attached to the understructure in any way, but just rests on it. The cradle operates on a series of free rollers on flat metal rails, and the power for pulling it is a system of four endless

chains attached to the cradle and passing over sprockets on a big geared winch and around sheaves. The weight of the foundation and the hoisting machinery is approximately forty to fifty tons. The machinery, consisting of a winch and the steam engine which operates it, is set on long bolts imbedded in a heavy wood timber foundation inside the boiler house located on high land on the upper end of the marine railway, and said machinery is kept in place by large nuts screwed onto these bolts. The machinery could be removed by unfastening the nuts and lifting the machinery off the foundation. The cradle could be removed from the particular location to another location either by removing its ballast or by the use of lighters to make it float. However, if it were removed to a new location, a new track and foundation would have to be built in order to accommodate this particular cradle. The cradle was constructed on the premises. The marine railway could not function without the cradle or without the tracks or without the chains and rollers or without the machinery. It requires the unity of the entire structure and all its component parts for operation as a marine railway."

The judge further found that "both the cradle and the hoisting machinery were integral parts of the marine railway which was composed of its aggregate parts attached to each other and built to operate in conjunction with each other as an entity."

We think that these facts and findings show that the cradle, its rollers, the chains and sheaves, and the machinery, including the engine and the winch, were part of the real estate for purposes of taxation. We start with the comprehensive language contained in G. L. (Ter. Ed.) c. 59, § 3, "Real estate for the purpose of taxation shall include all land within the commonwealth and all buildings and other things erected thereon or affixed thereto." It is not disputed that the piling and the track upon it were real estate. The cradle was to a degree attached to the real estate by means of the chains and the machinery, but what is much more significant, it belonged with the track and was to be used with it as a part of a single permanent in-

stallation.  It would be possible to remove it, but obviously removal of this immense structure was not anticipated as part of the ordinary course of events.  The cradle was designed to go with the particular track on the premises.  If removed, a new foundation and track would have to be built particularly for it.  Most frame houses could be removed from their foundations subject to similar conditions.  The fact that the cradle was built to be moved in one straight line for a limited distance is of no great consequence.  If an astronomer should place upon his house a revolving roof resting upon wheels or rollers we do not think that the roof would be personal property.  The cradle bears some analogy to an elevator in an office building or factory.

The following have been held to be part of the real estate for purposes of taxation: wooden buildings resting upon timbers simply lying upon the top of the ground and so built in order that they might be removed (*Milligan* v. *Drury*, 130 Mass. 428); a bank vault installed by a tenant, not forming part of the structure of the building but incapable of removal without damage to the building (*Callahan* v. *Broadway National Bank*, 286 Mass. 473); transplanted trees cultivated for purposes of sale (*Paine* v. *Assessors of Weston*, 297 Mass. 173); and a lunch cart standing on its own wheels on four cement "abutments" which went two feet into the ground, with a brick veneer wall around three sides of the cart (*Franklin* v. *Metcalfe*, 307 Mass. 386).  In respect to the cradle the case is plainly distinguishable from *Hall* v. *Carney*, 140 Mass. 131, where it was held that a railroad car could be attached as personal property under statutes providing for such an attachment.

The hoisting machinery, consisting of winch and engine, was also adapted for use with the cradle and was necessary to make the marine railway a complete operating unit.  All was heavy machinery, obviously installed with a view to permanence, and fastened to substantial foundations.  Moreover this hoisting machinery, as distinguished from most of the machinery in an ordinary factory, was not installed or used for the production of goods of any kind, but was in-

stalled and used solely for the operation of the real estate itself to make it serve the purpose to which as real estate it was devoted. In this respect it resembled the machinery sometimes employed for opening and closing heavy doors, for operating gates in dams and locks, and for similar purposes closely connected with real estate. Machinery whose bulk, method of attachment and ostensible permanence were comparable to those of the machinery here in question has frequently been held part of the realty, even when intended for general manufacturing and not for operating portions of the real estate itself. See, for example, *Richardson* v. *Copeland*, 6 Gray, 536; *McLaughlin* v. *Nash*, 14 Allen, 136; *Raddin* v. *Arnold*, 116 Mass. 270; *McConnell* v. *Blood*, 123 Mass. 47; *Hopewell Mills* v. *Taunton Savings Bank*, 150 Mass. 519. And see also *Menard* v. *Courchaine*, 278 Mass. 7.

The machinery involved in this case is to be distinguished from "machinery used in manufacture" which by the form of the valuation list prescribed by G. L. (Ter. Ed.) c. 59, § 45 (unless the commissioner of corporations and taxation prescribes or permits a different form), and by the direction of § 46 is to be assessed as an item of personal property and totaled with items of personal property. See *Hamilton Manuf. Co.* v. *Lowell*, 185 Mass. 114, 117. The machinery in question does not appear to have been "used in manufacture," and was properly assessed with the real estate in accordance with its true character. See now St. 1936, c. 362, exempting the machinery of manufacturing corporations from local taxation. The United States Circuit Court of Appeals for this circuit in *Richard T. Green Co.* v. *Chelsea*, 149 Fed. (2d) 927, 930–931, held that the cradle and hoisting apparatus of a marine railway which were almost exactly the same as those with which we are now dealing were properly taxable as part of the real estate under Massachusetts law. We think that that court correctly interpreted the law of this Commonwealth.

*Decision affirmed.*