HARTLEY B. GARDNER *vs.* BUCKLEY & SCOTT, INC.

Suffolk. March 11, 1932. — July 2, 1932.

Present: RUGG, C.J., CROSBY, WAIT, & FIELD, JJ.

*Real or Personal Property. Sale,* Conditional. *Mortgage,* Of real estate. *Words,* "Attached."

Automatic heating apparatus was installed in a house under a contract, made in September, 1928, which provided that the "lessee," the owner of the house, should pay to the "lessor," a dealer in such apparatus, during a period of sixty months certain promissory notes representing "rental payments"; that at the end of that term the "lease"

was to be "automatically renewed" from year to year, with monthly rental payments, unless, sixty days prior to its expiration, the "lessee" requested its termination in writing; that the "lessor" should "service" the apparatus during the terms of the "lease"; that the apparatus should remain the personal property of the "lessor" notwithstanding the manner of its attachment to the realty; and that the "lessee" acquired no title by virtue of the "lease." The various elements of the apparatus merely rested upon the floor and the only connections were piping which easily could be disconnected and electric wiring easily removable. The apparatus was not specially designed for use upon the premises or peculiar in its pattern. A mortgage of the house was given by the "lessee" after the making of the "lease," and later was foreclosed, neither the mortgagee nor the purchaser at the foreclosure sale having knowledge of the "lease." In a suit in equity by such purchaser against the "lessor" to enjoin the defendant from removing the apparatus from the house after the plaintiff had refused to make payments under the "lease," the above facts appeared and a final decree was entered dismissing the bill. The plaintiff appealed. *Held*, that

(1) A finding that the apparatus never became part of the real estate, but remained personal property, was warranted;

(2) The record disclosed no error of law.

A failure by the defendant to record the "lease" above described under the provisions of G. L. c. 184, § 13, was not material, that statute not being applicable in the circumstances.

The word "attached," as used in G. L. c. 184, § 13, means something more than annexed to the realty by such tenuous connections as above described; there must be something in the connection to indicate a bonding intended to secure permanent rather than temporary relationship between realty and the article in question.

BILL IN EQUITY, filed in the Superior Court on December 9, 1931, and described in the opinion.

The suit was heard by *Whiting*, J. Material facts are stated in the opinion. By order of the judge, a final decree was entered dismissing the bill. The plaintiff appealed.

*A. C. Blake*, for the plaintiff.

*C. P. Bartlett*, for the defendant.

WAIT, J. The plaintiff brings this bill to restrain the defendant from removing an oil storage tank and a Nokol Automatic Oil Heater from a single dwelling house owned and occupied by him. He took title to the premises on May 20, 1931. At that time the tank and heater were in the premises, and he knew nothing of the circumstances attending their installation.

By a contract dated September 21, 1928, Miller, a former

owner of the house, contracted with Buckley & Scott, Inc., which was engaged in the business of selling, distributing and installing oil burners and equipment, for the "lease and rent" for a period of five years of the tank and heater to be installed by it in his house. He bound himself to "pay for the use of said oil burning equipment a monthly rental" of $12 per month for sixty months, the "rental payments" to be evidenced by promissory notes of even date with the contract and he executed a note for $720 payable in such monthly instalments. At the end of the term the lease was to be "automatically renewed" from year to year unless, sixty days prior to expiration, the lessee requested its termination in writing. In the event that the lessor received no notice, the lessee was to "continue to make the minimum monthly rental payments in accordance" with the agreement. He warranted that he was owner of the premises where the equipment was to be installed, and covenanted that it should remain the personal property of the lessor notwithstanding the manner of its attachment to the realty, and that he acquired no title by virtue of the lease. He covenanted, further, to make all "rental payments promptly"; and, in the event of default, that at the option of the lessor, the total rental for the entire period remaining should at once become due and payable, the lessor might enter, take possession, and remove it without notice, and all payments theretofore made be retained by the lessor for the use of the equipment, and all rental payments thereafter due to become immediately due and payable as liquidated damages for the breach. The lessee was to keep the equipment clear of all liens and charges of any character; to use it carefully; to be responsible for damage to it, and upon expiration or default to deliver it up in good condition, reasonable wear and tear of ordinary usage excepted. The lessor agreed to "service" the equipment during the term; to make repairs and replacements necessary through ordinary operation for which the lessee was to pay, replacements to remain the property of the lessor. The service included starting and making necessary adjustments at the beginning of each

heating season; inspecting; on specific request, rendering emergency assistance and doing all things reasonably necessary to make the heater function; overhauling and greasing at the end of heating season and cleaning boiler and flue pipe. The contract "contemplated that the Lessor may assign the territory including the place where the personal property mentioned in this contract is installed to some person, persons or corporation other than the Lessor" and provided, if that occurred, "the Lessor may assign this contract to such other person, persons or corporation and the latter shall thereupon without notice to the Lessee have and assume all the rights and obligations of the Lessor as of the date of such assignment."

No notice of this rental agreement was recorded in the registry of deeds. Shortly after its execution the equipment was installed and connected with the steam heating system already in the house. The cylindrical steel tank weighing about one hundred seventy-five pounds was set upon the concrete cellar floor, resting on four steel legs and not fastened to the floor. It was connected with the burner by a pipe, which was not attached to the building and was removable by unscrewing. A fill pipe ran from outside the house through a hole drilled in the concrete cellar wall to the tank. This was removable by unscrewing. The oil burner weighed about one hundred fifty pounds, was about five feet long and stood eighteen inches above the floor. It rested at one end on two iron legs which stood about three feet outside of the steam boiler of the heating system and in front of it; and, at the other end, inside the boiler on an iron cradle resting on the floor. The aperture through which it passed into the steam boiler was closed by bricks, uncemented, placed around the burner and made air tight by a coating of asbestos over bricks and tubing. This asbestos coating was brittle. It could be broken by a kick, and be removed without damage to the building or boiler. The ash pit door and the grates of the steam boiler were removed to permit this adjustment. A single gas pipe dropped from the gas supply pipe of the house on the cellar ceiling to the burner. It could be removed by un-

screwing at either end. A wire running through a galvanized conduit from a special cutout box on the house meter board connected the house electric supply with the burner. It could be removed at either end. The asbestos coating, the gas pipe and the electric wire were the only attachments of the burner to the real estate.

About May 7, 1929, Miller mortgaged the premises to a corporation by a deed recorded May 8, 1929, which conveyed the land and buildings "Together with all garages, furnaces, heaters, ranges, screens, awnings, mantels, gas and electric fixtures and all other fixtures of every kind now or hereafter installed in and about said premises, all of which it is agreed shall constitute and be treated as part of said realty." The mortgagee had no notice of the "rental agreement." Nor had the defendant notice of this deed.

Until February of 1931, Miller made monthly payments under the rental agreement. About March 16, 1931, the mortgagee foreclosed its mortgage by sale; and, later, conveyed to the plaintiff. Neither grantor nor grantee then knew of the rental agreement. In June, 1931, the defendant learned of the conveyance. It notified the plaintiff that unless he continued the monthly payments, it would remove the oil tank and burner. The plaintiff refused to pay, and has continued to use the equipment.

The trial judge, in addition to the hearing on agreed facts and testimony of witnesses, saw an oil burner of the type in question which, with a model fire box with brick and asbestos, was set up in court. He found, in addition to what has been stated, that the burner was a stock burner that would fit in any house where a burner of that size was needed, that it rested on but was not attached to the floor, and that it bore a plate with the trade name, etc., upon it; but that neither tank nor burner bore anything stating it to be the property of the defendant. He found and ruled, as mixed law and fact, that neither tank nor burner ever became part of the real estate, that both remained personal property; and he ruled that G. L. c. 184, § 13, "as amended" does not apply to either tank or burner

as installed under the terms of the "rental agreement." He dismissed the bill with costs. We find no error.

The plaintiff's title depends upon whether the mortgagee, from whom he obtained his deed, had a right superior to that of the defendant in the tank and burner. The mortgagee's right depends upon whether that equipment had become part of the realty and lost its character as personal property. If, at the time the mortgage was executed, this equipment was in fact and law part of the realty, title, in the absence of notice to the mortgagee of the agreement, passed by the mortgage deed to the mortgagee in spite of the agreement with the defendant that it should remain personal property. *Hunt* v. *Bay State Iron Co.* 97 Mass. 279. *Southbridge Savings Bank* v. *Mason*, 147 Mass. 500.

The decision whether tank and burner had become realty was matter of fact as well as of law. *Automatic Sprinkler Corp. of America* v. *Rosen*, 259 Mass. 319, 323. *Medford Trust Co.* v. *Priggen Steel Garage Co.* 273 Mass. 349, 353. The finding of fact is binding upon us unless clearly wrong. The factors to be considered in reaching a conclusion are well stated in *Stone* v. *Livingston*, 222 Mass. 192. In the case before us it was found that the identity of the chattels had not been lost; that they could be removed without material injury to the real estate or to themselves; they were not specially designed for use upon the premises, were not peculiar in their pattern, and were put in before the execution of the mortgage. Furthermore, it could properly be found that, when put in, they were not intended to become part of the real estate, and were not annexed with an eye to a permanent increase in the value of the premises or to the readier adaptation of the premises for letting to tenants. We see nothing which indicates clearly an intent to make them part of the realty, or which in law requires a finding that they have lost their character as chattels. The factors stated justify the finding of fact made by the judge. It is not clearly wrong.

The ruling that G. L. c. 184, § 13, as amended, does not apply was correct. That statute so far as here material provides: "No conditional sale of heating ap-

paratus . . . or other articles of personal property, which are afterward wrought into or attached to real estate, whether they are fixtures at common law or not, shall be valid as against any mortgagee, purchaser or grantee of such real estate, unless" recorded as therein indicated. Even if it be assumed that the "rental agreement" be a conditional sale (see *Russell* v. *Martin*, 232 Mass. 379, 382), and this equipment be "articles of personal property" of the same kind or of the same general description as "heating apparatus" (see *Babcock Davis Corp.* v. *Paine*, 240 Mass. 438, 441, and *Lancaster Iron Works, Inc.* v. *Otter River Brick Co.* 277 Mass. 102), the tank and burner were not "afterward wrought into or attached to real estate" within the meaning of the statute, and it is therefore inapplicable. *Security Co-operative Bank of Brockton* v. *Holland Furnace Co.* 274 Mass. 389, 391.

The plaintiff is right in contending that *Greene* v. *Lampert*, 274 Mass. 386, does not decide that the statute is to be read as though its words were "wrought into and attached to," so as to require physical incorporation of the chattels with the real estate. Nevertheless we think the word "attached," followed as it is by "whether they are fixtures at common law or not," means something more than annexed to the realty by such tenuous connections as were used here. There must be something in the connection to indicate a bonding intended to secure permanent rather than temporary relationship between realty and the article in question. Sealing necessary to obtain a tight junction should not necessarily determine whether an attachment is or is not within the statute. This, in substance, was decided in *Morrison* v. *Segal*, 270 Mass. 292, for the stoves there found to have remained personal property were joined to the realty as amply as the tank and burner here in question. ·

The statute is negative in nature. *Greene* v. *Lampert*, 274 Mass. 386. *Waverley Co-operative Bank* v. *Haner*, 273 Mass. 477. *Commercial Credit Corp.* v. *Gould*, 275 Mass. 48. We find no decision which holds that chattels which have never lost their character as personal property

can be held against a conditional vendor by mortgagee, purchaser or grantee of the real estate where they are placed, unless they fall within the classes enumerated in G. L. c. 184, § 13, as amended by St. 1929, c. 261, and have been wrought into the realty or attached to it in some manner intended to be permanent.

The findings and rulings are within *Medford Trust Co.* v. *Priggen Steel Garage Co.* 273 Mass. 349, *Morrison* v. *Segal,* 270 Mass. 292, *Automatic Sprinkler Corp. of America* v. *Rosen,* 259 Mass. 319, *Commercial Credit Corp.* v. *Gould,* 275 Mass. 48, *Stiebel* v. *Beaudette & Graham Co.* 275 Mass. 108, *Walker Dishwasher Corp.* v. *Medford Trust Co.* 279 Mass. 33. They are not controlled by *Waverley Co-operative Bank* v. *Haner,* 273 Mass. 477, *J. H. Gerlach Co. Inc.* v. *Noyes,* 241 Mass. 69, *Greene* v. *Lampert,* 274 Mass. 386, *Security Co-operative Bank of Brockton* v. *Holland Furnace Co.* 274 Mass. 389, *Commercial Credit Corp.* v. *Commonwealth Mortgage & Loan Co. Inc.* 276 Mass. 335. See *Abeloff* v. *Peacard,* 272 Mass. 56.

Our order must be

*Decree affirmed with costs.*