GAR WOOD INDUSTRIES, INC. *vs.* COLONIAL HOMES, INC., & others.

Suffolk.    December 6, 1938. — January 16, 1940.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & RONAN, JJ.

*Mortgage,* Of real estate: personalty attached to mortgaged premises under conditional sale. *Personal Property,* Attachment to real estate. *Sale,* Conditional. *Equity Pleading and Practice,* Findings by judge. *Words,* "Attached to."

Conclusions of fact drawn from agreed facts by a judge hearing a suit in equity are open to review by this court.

A vendor of a heating and humidifying system, sold by a contract of conditional sale and attached to real estate as described in G. L. (Ter. Ed.) c. 184, § 13, if he had not recorded the notice required by the statute, was not entitled, irrespective of the intention of the parties to such contract, to possession under its terms against the holder of a mortgage of the real estate afterwards given to one who then believed the system fully paid for.

Agreed facts required the conclusion that a central heating and humidifying system installed in a dwelling house was "attached to real estate" within G. L. (Ter. Ed.) c. 184, § 13.

BILL IN EQUITY, filed in the Superior Court on November 17, 1937.

The case was reported by *Good*, J.

*C. H. Waterman*, for the defendant The Prudential Insurance Company of America.

*R. I. Gottlieb & H. Coltun*, for the plaintiff, submitted a brief.

DOLAN, J.    This is a suit in equity brought by the conditional vendor of an air conditioning and heating system, against the Colonial Homes, Inc., the conditional vendee thereof and the owner of record of the realty in which the system is installed, and against the Prudential Insurance Company of America and Morris Goldfine, mortgagees under mortgages executed and delivered by the defendant Colonial Homes, Inc., subsequently to the sale and installation of the system. The relief sought is, in substance, that so much of the system as the terms of the contract of sale so provide be established to be personal property, that the plaintiff's right thereto be established, and that respective decrees be entered ordering the defendants or any of them to deliver to the plaintiff such personal property as the court decrees. Other prayers are that the amount due to the plaintiff from Colonial Homes, Inc., be determined and for damages for detention of the equipment involved.

The judge, after hearing, made an order for decree which contained certain findings of fact. Thereafter he filed supplemental findings of fact amending in part those found in his original order for decree. Still later the parties filed a statement of additional agreed facts, in which it is recited that "it is hereby agreed by and between all the parties hereto that the material facts in addition to those found by the court are as follows." The facts therein set forth were adopted by the judge and incorporated in his supplemental findings of fact. The judge then entered a "Supplemental Order For Final Decree and Report" in which he reported the case for determination by this court upon the pleadings,

the supplemental findings of fact, and the additional facts agreed upon by the parties. In this order it is stated that a final decree is to be entered in a form attached if the entry of such a decree is warranted, and that otherwise such final decree is to be entered as justice and equity may require. The proposed form of decree, if warranted, is to the effect that "a unit consisting of a combination of hot air furnace, electric blower, air filter, humidifier and electric controls encased in a steel jacket, and automatic oil burner, when installed remained personal property and was not wrought into the realty or attached to it in a manner intended to be permanent, and . . . is not subject to the mortgage liens of the defendants, the Prudential Insurance Company of America or Morris Goldfine; [that] the plaintiff is entitled to the possession of the said property as against the defendants . . ."; and that "there is due from the defendant, Colonial Homes, Inc., to the plaintiff $326.00, together with interest thereon from November 17, 1937, which said defendant, Colonial Homes, Inc., shall pay within twenty-one days of the date hereof, and upon the failure of the said defendant, Colonial Homes, Inc., to pay said sum as ordered, the plaintiff is entitled to possession of the property described in the bill of complaint but more particularly set forth in paragraph one hereof, and the defendants are restrained from interfering in any manner with the plaintiff in repossessing the same."

The facts may be summarized as follows: The building in which the air conditioning and heating system was installed is a frame dwelling of two and one half stories. The equipment is a complete heating and humidifying unit, consisting of a stock furnace with an oil burner, air humidifier, blower, blower motor and filter attachments, electrical control attachments, all being encased in a steel jacket, and duct work built within the walls of the house, and extending to and returning from its rooms. The oil burner, furnace, fuel tank and the air blower, blower motor and filter, rest upon pedestals which, in turn, rest upon, but are not attached to, the basement floor. A copper tubing running from the fuel tank to the oil burner is embedded in the cement floor of

the basement, but is not sought by the plaintiff. The motor is connected by wires to the electrical system of the house and to the electrical controls of the system. The humidifier is connected to the water supply by boring a small hole in one of the pipe lines and connecting thereto a three-eighths inch copper tubing, which extends to the humidifier and is held fast by a clamp. This connection is removable by unscrewing the clamp, removing the tubing and plugging the hole. The furnace is connected to the chimney by a smoke pipe, which may be disconnected at the furnace by "merely slipping off the smoke pipe." The unit is connected to the duct work portion of the system by a three-inch strip of canvas held to that part of the duct work called the plenum chamber and to the unit by clamps held together by small screws "which are removed in the ordinary manner." In addition to the ducts there are registers and grilles to which, together with any other parts of the system that are embedded in the walls or floor of the building, the plaintiff makes no claim. Exclusive of ducts, grilles and registers the unit weighs fifteen hundred pounds, and "Any part of the unit in its entirety" can be disassembled without injury to any part of it or to the premises, and can be removed through existing openings in the building. The system is "the only means of heating the house except for the fire-places."

The installation of the unit was completed on November 13, 1936, under a contract of conditional sale with the defendant Colonial Homes, Inc., dated October 25, 1936, at an agreed price of $820. At the time of the filing of the bill of complaint a balance of $326 was due and unpaid. Under the terms of the contract it is provided that the title to the equipment, "excepting house wiring, ducts and piping imbedded in walls, floors or ceilings . . . shall not pass to the Buyer, but shall remain in the Seller until the agreed price . . . is fully paid in cash; said new equipment shall remain strictly personal property and nothing (anything which may be done by the parties hereto to the contrary notwithstanding) shall prevent the Seller from removing same, or so much of same as the Seller in its sole discretion

may determine, from any premises to which it may be attached, upon any breach of this Contract." It is also provided in the contract that "It is mutually understood and agreed that all house wiring, ducts and piping installed by the Seller which are imbedded in walls, floors or ceilings shall become a part of the building and are not any part of the property to which title is retained by Seller as provided in above Paragraph No. 8 of this Contract." No notice of the conditional sale was recorded.

On or about February 9, 1937, the defendant Colonial Homes, Inc., "mortgaged the premises for $8,000 to the defendant, The Prudential Insurance Company of America." This mortgage was still held by the latter "at the time of the trial." On or about February 9, 1937, "Colonial Homes, Inc., gave a second mortgage of the premises to the defendant Morris Goldfine in the amount of $2,000." At the time the insurance company and Goldfine "took their mortgages, their agents saw the said heating system completely installed in the house and believed the system to be fully paid for and took their mortgages on that belief."

The plaintiff has argued that the findings of the judge were based, in part, on oral evidence and that therefore they cannot be reversed unless plainly wrong. This contention is without merit, since the record discloses that the decision of the judge was based solely on the facts reported to which the parties agreed. The findings being completely upon agreed facts, it is the duty of this court to draw its own inferences and to reach its own conclusion unaffected by the action of the judge. *Bankers Trust Co.* v. *Dockham,* 279 Mass. 199. *Goldston* v. *Randolph,* 293 Mass. 253, 255, and cases cited. Compare *Birnbaum* v. *Pamoukis,* 301 Mass. 559. The ultimate findings or conclusions of the judge are open for review not only so far as they involve rulings of law, but also so far as they are conclusions or inferences of fact. *Hannah* v. *Frawley,* 285 Mass. 28, 31.

Considered in the light of the governing statute, G. L. (Ter. Ed.) c. 184, § 13, we are of opinion that the subsidiary facts found do not warrant the ultimate findings of

the judge that the unit in question was not attached to the real estate and is not subject to the mortgage liens of the defendant mortgagees and that the plaintiff is entitled to the same.  It is true that the ultimate findings just referred to also recited that the unit "was not wrought into the realty or attached to it in a manner intended to be permanent," but we think that it was not necessary that the unit should be "wrought into" the real estate, under the terms of the statute, but that it was sufficient if it was attached to the real estate, and also that, under the terms of the statute, the intention of the parties is immaterial. Confusion may arise from a failure to observe that intention plays no part in cases coming within the statute.

Assuming, without deciding, that the subsidiary facts in the case at bar would not warrant a finding that the articles involved were wrought into the real estate in question, the issue then is whether they were attached to the real estate within the meaning of the statute.  The element of intention does not enter into the determination of that issue.

G. L. (Ter. Ed.) c. 184, § 13, provides as follows: "No conditional sale of heating apparatus, plumbing goods, ranges, buildings of wood or metal construction of the class commonly known as portable or sectional buildings, or other articles of personal property, which are afterward wrought into or attached to real estate, whether they are fixtures at common law or not, shall be valid as against any mortgagee, purchaser or grantee of such real estate, unless not later than ten days after the delivery thereon of such personal property a notice such as is herein prescribed is recorded in the registry of deeds for the county or district where the real estate lies.  The notice shall be signed by the vendor or a person claiming under him and shall contain the names of the contracting parties, the name of the record owner of the real estate at the time of recording the notice, the fact that it is agreed that title to such personal property shall remain in the vendor until the purchase price is paid, the terms of payment and the amount of such purchase price remaining unpaid, and descriptions, sufficiently

accurate for identification, of such real estate and the personal property delivered or to be delivered thereon.   If the sale is of several articles for a lump sum greater than the value of the personal property delivered or to be delivered on the real estate, the notice shall also state such lump sum and such value.   The notice shall be indexed under the name of such record owner, and a release of title in any such article of personal property may be recorded at any time." (See now St. 1937, c. 245, §§ 1, 2.)

Section 13 was first enacted as St. 1912, c. 271.   On March 3, 1911, the case of *Henry N. Clark Co.* v. *Skelton*, 208 Mass. 284, which related to a portable furnace installed under the terms of a contract of conditional sale, was decided and the finding of the jury that the furnace did not become a part of the real estate was sustained.   The mortgage in that case, however, preceded the installation of the furnace.   Without attempting to consider whether St. 1912, c. 271, was enacted as a result of that decision, it is permissible to observe that when the statute was enacted in 1912 the Legislature must be presumed to have known of the decision.   *Proprietors of the Cemetery of Mount Auburn* v. *Unemployment Compensation Commission*, 301 Mass. 211, 213.

Most of the cases decided since the enactment of the statute do not come within its provisions.   A large number of them concern articles not within the class referred to in the statute.   See, for example, *Babcock Davis Corp.* v. *Paine*, 240 Mass. 438, 441; *Medford Trust Co.* v. *Priggen Steel Garage Co.* 273 Mass. 349; *Titcomb* v. *Carroll*, 287 Mass. 131.   (With reference to the last two cases cited it should be observed that the conditional sales involved preceded the enactment of St. 1929, c. 261 whereby "buildings of wood or metal construction of the class commonly known as portable or sectional buildings" were added to the list of articles included within the provisions of G. L. c. 184, § 13.) Another class of cases, including *Commercial Credit Corp.* v. *Gould*, 275 Mass. 48, *Stiebel* v. *Beaudette & Graham Co.* 275 Mass. 108, and *Greene* v. *Lampert*, 274 Mass. 386, was not within the statute, since the mortgage preceded the

conditional sale, and it is settled that the statute does not apply where the mortgage is in existence prior to the conditional sale. *Waverley Co-operative Bank* v. *Haner*, 273 Mass. 477, 481. *Security Co-operative Bank of Brockton* v. *Holland Furnace Co.* 274 Mass. 389, 391. *Sacks* v. *McKane*, 281 Mass. 11, 20. In the second case just cited the articles were removed before the mortgage was recorded, so that the mortgagee had no right against the conditional vendor to have them remain.

The cases to which the statute did not apply necessarily turned on the common law. Generally speaking, according to the common law a mortgagee could hold articles that had become a part of the realty, and the question in such cases was whether those articles had become a part of the realty. This is a mixed question of fact and law and has been dealt with in many cases. There is a summary in *Stone* v. *Livingston*, 222 Mass. 192, 194, 195, where it is pointed out that there are three classes of cases: first, those where the articles are clearly a part of the realty by reason of the manner of annexation; second, those where they are clearly not a part of the realty, and in these two classes the "facts rebut all other evidence of intention to the contrary"; third, where intention is the controlling fact, and many of the cases have turned upon intention. We think, however, that, in enacting the governing statute, the Legislature intended to avoid confusion by eliminating the element of intention by providing, with respect to a limited class of cases, that if in fact the articles were either "wrought into" or "attached" to real estate a conditional vendor could not claim them as against a subsequent "mortgagee, purchaser or grantee of such real estate" unless the vendor had recorded the notice provided for by the statute. While the prior test as to the intermediate class of cases was annexation plus intention, the statute made being "wrought into" or "attached" sufficient to preclude a conditional vendor from claiming the articles unless he recorded the statutory notice. The statute is concerned not with whether the articles remain personal property after attachment to the real estate, but only with the question whether they have in fact been

wrought into or attached to it.  That there may not have been an intention to make the attachment permanent is not material.  The inclusion among the articles to which the statute is applicable of "fixtures" tends to indicate that this is so.  Ordinarily it is a characteristic of a fixture that under some circumstances it may be removed.

It is true that in *Gardner* v. *Buckley & Scott, Inc.* 280 Mass. 106, the court said, at page 111: "Furthermore, it could properly be found that, when put in, they [an oil tank and oil burner] were not intended to become part of the real estate, and were not annexed with an eye to a permanent increase in the value of the premises or to the readier adaptation of the premises for letting to tenants," and that "We see nothing which indicates clearly an intent to make them part of the realty, or which in law requires a finding that they have lost their character as chattels"; and at pages 112–113: "We find no decision which holds that chattels which have never lost their character as personal property can be held against a conditional vendor by mortgagee, purchaser or grantee of the real estate where they are placed, unless they fall within the classes enumerated in G. L. c. 184, § 13, as amended by St. 1929, c. 261, and have been wrought into the realty or attached to it in some manner intended to be permanent."  We have already pointed out that, even though the articles enumerated in the statute retain their character as chattels after attachment to the realty, they come within the terms of the statute if attached to the realty within the meaning of the statute, and that the element of intention does not enter into the determination of that question.  In the case just referred to no discussion of the element of intention was necessary to the decision, since on the facts it could not have been found that the articles involved were attached to the realty within the meaning of the statute.  The claim of the lessor of the articles in that case did not relate to the central heating plant.

The determinative question remains whether the heating apparatus here involved (and we think it is a fair inference from the facts found that this apparatus, together with the humidifying apparatus, constitutes one unit) is attached

to the real estate in question within the meaning of the statute. We think that, by virtue of the numerous connections between the unit and the real estate, and of other considerations to which we shall refer, it must be found that the unit was attached to the real estate within the meaning of the statute. The statute by its own terms refers to articles of personal property that remain personal property if they are "attached to" real estate. The central heating plant of a dwelling house is not a piece of furniture. Successive tenants do not bring it with them when they become occupants, nor take it away with them when they cease to occupy the dwelling. It remains and, in the ordinary course of events, performs its function of heating until it wears out or is otherwise rendered inefficient or useless. It relates to the building itself. A prospective purchaser or mortgagee of the real estate, in the absence of the notice required to be recorded under the terms of the statute, could reasonably expect that it was so attached to the real estate as to be a constituent part of it. Its presence has a distinct relation to the value of the premises for the purpose of sale or mortgage. The Legislature in enacting the statute must be taken to have known the ordinary methods employed in the installation of heating apparatus. If the unit in the present case can be found not to be attached to the real estate within the meaning of the statute, it is difficult to conceive of a case where a heating apparatus of a central heating type could be said to be within the terms of the statute. In this connection it is pertinent to point out that among the articles described in the statute are included ranges, which within common knowledge are ordinarily attached to real estate by far less substantial connections than the central heating unit here involved. (See *Jennings* v. *Vahey*, 183 Mass. 47, 49.) To find that the unit in the case at bar was not attached to the real estate within the meaning of the statute would be to defeat the statute's obvious purpose.

It follows from what we have said that, since the conditional vendor did not comply with the statute, it has lost its rights as against the defendant subsequent mortgagees,

and that the decree proposed to be entered by the judge cannot properly be entered.

Instead thereof, a decree is to be entered to the effect that the defendant Colonial Homes, Inc., owes the plaintiff as the balance due on the purchase price of the unit under the conditional sales contract the sum of $326 together with interest thereon from November 17, 1937, that the said defendant pay that sum with interest as aforesaid to the plaintiff, and that the bill be dismissed as to the defendant mortgagees with costs.

*Ordered accordingly.*