BAY STATE YORK COMPANY *vs.* MARVIX, INCORPORATED,
& others.

Suffolk. March 1, 1954. — May 19, 1954.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Real or Personal Property. Mortgage,* Of real estate: what property
covered, personalty attached to mortgaged premises, air conditioning
apparatus. *Sale,* Conditional sale. *Real Property,* Attachment of
personalty, Air conditioning apparatus. *Personal Property,* Attach-
ment to real estate, Air conditioning apparatus. *Equity Pleading and
Practice,* Inferences.

Failure to record under G. L. (Ter. Ed.) c. 184, § 13, as amended, a
conditional sale contract covering apparatus installed on real estate
already subject to a mortgage was immaterial in determining the right
of the conditional vendor thereafter to remove the apparatus from the
real estate as against one who had purchased the real estate at a sale
in foreclosure of the mortgage. [410–411]
On appeal in a suit in equity heard on a statement of agreed facts, this
court draws the proper inferences from such facts without regard to
inferences drawn by the trial judge. [411]
Air conditioners forming independent units for providing local air con-
ditioning in limited spaces, and a water tower for assisting the circula-
tion of water to the conditioners, all of standard design and not made
especially for a long existing office building in which they were in-
stalled, and readily detachable from water and other connections and
removable from the building without injury to it or themselves, re-
mained chattels and did not become part of the realty nor subject to a
mortgage outstanding thereon at the time they were installed. [411–
413]

BILL IN EQUITY, filed in the Superior Court on December
28, 1951.

The suit was heard by *Goldberg,* J.

*Edwin A. Cheney,* for the defendant trustees, submitted a
brief.

*Sydney Berkman,* (*Joseph Kruger* with him,) for the
plaintiff.

WILLIAMS, J. This is a suit in equity to obtain possession
of a water cooling tower and four air conditioning units
described in the bill as "two models, BW–550 and two

models, BW–350," to which the plaintiff alleges title under the terms of written contracts of conditional sale. According to a statement of agreed facts on which the case was presented, the plaintiff on January 9, 1950, sold to Cleary Realty Corporation, the owner of a four story office building at 256–258 Boylston Street in Boston, one model 550 and one model 350 air conditioning units, and on April 4, 1950, one model 701 air conditioner and ice maker and two model 552 and two model 351 air conditioning units. These appliances, with a water cooling tower, were sold under written contracts of conditional sale which provided that title should remain in the seller and that the appliances should remain personal property until payment for them was made. The ice maker was installed by the purchaser in the cellar of its building, the water cooling tower on the roof, and the air conditioning units on the second and third floors. The premises at the time were subject to two mortgages, the first being held by the defendant Pond and the second by the defendant Marvix, Incorporated. The second mortgagee foreclosed its mortgage in December, 1951, and at the foreclosure sale the mortgaged property was purchased by certain trustees who are defendants. Cleary Realty Corporation defaulted in its payment for the equipment and as of August, 1950, owed the plaintiff $15,417.

In its bill as amended the plaintiff prayed that its "right to the two models, BW–550 and the two models, BW–350 and to the cooling tower be determined" and that the defendants Pond, Marvix, Incorporated, and the trustees be ordered to permit the plaintiff to remove them from the Boylston Street building. All defendants answered. In the Superior Court a final decree was entered adjudging that the "two model BW 550 and two model BW 350 air conditioners and the said water cooling tower" which had been installed in the Boylston Street building were personalty and that the plaintiff was entitled to remove them unless the defendants or "either" of them should pay to the plaintiff within a stated time the amount due it with interest. From this decree the trustees appealed.

In addition to the facts above recited the statement of agreed facts contained the following:

"All of the air conditioning units installed pursuant to the conditional sales agreements were of standard design, not made especially for this building. They were not bolted down nor set on any foundation and could be moved from place to place within the same building, or to another building. They operate electrically and each may be plugged in by an electric cord to any ordinary electric outlet in the building. The air conditioners require the circulation of water for their operation and each has three flexible connections with water pipes in the building which may be readily connected or disconnected. The water tower on the roof holds the water so that it may be recirculated through the machines, and it is connected to the water pipes leading to the machines. This tower rests on two steel girders which extend across the roof. Neither the tower nor the girders are bolted to the building."

"There is also a system of ducts to distribute cool air through the building, the inlet of these ducts being connected to the conditioners by a removable canvas connection about five inches in length. The plaintiff makes no claim for these ducts."

"The specifications under which said air conditioning equipment was purchased and installed indicate its purpose to have been to . . . 'cool such air conditioning spaces to an average temperature of 80° Fahrenheit, and to produce a relative humidity not exceeding 50% when the outside temperature is 95° Fahrenheit . . . .'"

"Subsequent to the execution of said conditional sales agreement [s], the plaintiff on August 17, 1950, recorded notices of the conditional sales with the Suffolk registry of deeds. It is, however, agreed that said recordation was not in compliance with G. L. c. 184, § 13."

"The building numbered 256–258 Boylston Street, Boston, had been built many years prior to the time the plaintiff sold and installed the air conditioning equipment."

"Since the building was built, it has been used as an

office building and was so being used at the time of the installation of the air conditioning equipment, and is so being used up to the present time."

"The air conditioning equipment could without injury to itself, or to the realty, be easily removed and used elsewhere, and in the event it were so removed the building could thereafter be used in the same manner and for the same purposes as it was employed prior to the installation of the air conditioning equipment."

"It is agreed that three descriptive flyers containing pictures of the equipment hereinabove described may be introduced as evidence." These "flyers" are marked exhibits 1, 2 and 3.

Of the nine appliances purchased by the realty company the suit relates only to the water tower and four air conditioners described in the bill and decree as two models 350 and two models 550. As only one model 350 and one model 550 were purchased from the plaintiff, it is obvious that of these four air conditioners two were incorrectly described. From an examination of exhibit 2, which contains pictures and descriptions of certain models listed as 351 and 551 together with pencilled notations relating to models 350, 550, and 552, we conclude that model 350 is substantially like in design to model 351 and models 550 and 552 are substantially like in design to model 551. It, therefore, may be assumed that as to one of the air conditioners described in the bill and the decree as model 350 the intended reference was to model 351 and as to one of those described as model 550 the intended reference was to either model 551 or model 552. Since the parties have made no point of the misdescription and the error may be cured in the final decree after rescript, the merits of the case are considered on this assumption.

The question for decision is whether the four air conditioners and the water tower, when installed by the owner of the building, became a part of the realty to which the appellants obtained title from the second mortgagee by purchase on foreclosure sale. As the second mortgage was

recorded prior to the purchase and installation of the chattels, the rights of the parties are not affected by the failure of the plaintiff properly to record its contracts of conditional sale according to the provisions of G. L. (Ter. Ed.) c. 184, § 13, as amended. *Commercial Credit Corp.* v. *Gould,* 275 Mass. 48. *Gar Wood Industries, Inc.* v. *Colonial Homes, Inc.* 305 Mass. 41, 48.

It is the rule in this Commonwealth that the conversion of chattels to realty by reason of annexation depends, as between owner and mortgagee, on the intent of the owner when he puts the chattels in place. It is not his undisclosed purpose which controls, but his intent as objectively manifested by his acts and implied from what is external and visible. *Hopewell Mills* v. *Taunton Savings Bank,* 150 Mass. 519, 521–522. *Stone* v. *Livingston,* 222 Mass. 192, 195. *Gardner* v. *Buckley & Scott, Inc.* 280 Mass. 106, 111. *General Heat & Appliance Co.* v. *Goodwin,* 316 Mass. 3, 8. See Am. Law of Property, § 19.12. Where the chattel is so affixed to the realty that its identity is lost, or where it cannot be removed without material injury to the realty or to itself, the intent to make it a part of the realty may be established as matter of law (*Stone* v. *Livingston,* 222 Mass. 192, 194–195) but ordinarily its determination requires a finding of fact. See cases cited in *General Heat & Appliance Co.* v. *Goodwin,* 316 Mass. 3, 10. Consideration must be given to the nature of the chattel and the apparent object, effect, and mode of its annexation to the realty. *Southbridge Savings Bank* v. *Mason,* 147 Mass. 500, 502. From the facts which are presented by agreement in the present case we may draw such inferences as we deem proper without regard to the inferences drawn by the Superior Court. *Stuart* v. *Sargent,* 283 Mass. 536, 541. *General Heat & Appliance Co.* v. *Goodwin,* 316 Mass. 3, 8.

These facts make it plain that the four air conditioners and the water tower are of standard design, not made especially for this building, and are readily detachable without resulting injury to the building or to themselves. They can be moved from place to place within the same

building or to another building. The air conditioners are housed in cabinets of moderate size, models 550, 551, and 552 being somewhat larger than models 350 and 351. According to the description in exhibit 2 they "are compact self-contained air conditioners designed for medium-sized commercial applications — to provide at minimum cost a cool, refreshing atmosphere that invites customers to stay longer, buy more. Quickly and easily installed, with only water, drain and electrical connections necessary. . . . 4-way directional discharge grilles permit directed air flow to suit the size and shape of conditioned spaces." Although the statement of agreed facts indicates that they have canvas connections with a system of ducts, no mention of duct connection is made in exhibit 2 while exhibit 3 which relates to a larger model listed as 701 states that 701 is "Designed to provide complete air conditioning in larger applications where ductwork is necessary for air distribution." Whether or not the four air conditioners in question were in fact connected to the ducts, they appear to be independent units designed to provide local air conditioning in limited spaces, and form no necessary part of an air conditioning system. They were installed only on the second and third floors of the building. Doubtless the purpose of the owner was to make the offices on those floors more attractive to tenants. We are led to believe, however, that the installation was probably tentative and in the nature of an experiment. Its effect on rental values was problematical. So far as we are aware, air conditioning in this part of the country as applied to office buildings is not in such general use that its necessity or beneficial effect on rental values has been demonstrated. See *Hook* v. *Bolton*, 199 Mass. 244, 247; *Strain* v. *Green*, 25 Wash. (2d) 692.

As we understand it, the water tower assists the circulation of water to the different units. If these units are discontinued and disconnected it does not appear that the tower will be required as a circulating medium for water in any established system. We conclude that the water tower and air conditioning units were not installed with any

definite purpose of permanent retention. In our opinion they did not lose their character as chattels and become a part of the realty. The final decree should be modified in order to make clear by further description the identity of the units to which it refers. As so modified it is affirmed.

*So ordered.*