Agnes, A.J.
1.Introduction
1. This is a dispute about whether a restaurant and local landmark — the “Miss Worcester Diner” — -is part of the real property on which it is located or the personal property of the plaintiff who has been the most recent operator of the business.
2. The case is before the court on the plaintiffs motion for a preliminary injunction to enjoin the defendants from exercising any dominion and control over the premises known as the “Miss Worcester Diner” located at 300 Southbridge Street, Worcester, Mass. The court did not conduct an evidentiary hearing, but I make the following preliminary findings of fact based on the basis of the verified complaint and certain additional information supplied by the parties at the hearing. Most of the essential facts are not in dispute.
2. The Facts
3. The parties agree that the real estate known as 300 Southbridge Street was acquired by the defendants’ predecessor in interest, S&B Realty Corp., in 1950. In 1974, S&B Realty deeded the property to Saul Talbert. When Saul Talbert died, the property passed to the defendant, Saul Talbert Trust. See Defendants’ Opposition, Exhibit B. The second defendant, Talbert Trading Corp., leases the land and buildings located at 300 Southbridge Street from the defendant, Saul Talbert Trust. The present controversy erupted in December 2003 when the defendants insisted that Frank Riggieri sign a written lease and that he pay arrearages for rent and water allegedly due in the amount of $3,476.18. Apparently neither Frank Riggieri nor the then operator, Tina Budzinski, would sign a lease. A notice to quit was served on the pair in which the defendants claimed that the entire physical structure of the restaurant was “real estate,” that the defendants intended to terminate the tenancy, and that the occupants or leasees should remove all personal property and quit the premises. Defendants’ Memo at 3. A Summaiy Process action ensued in the Worcester District Court which resulted in a judgment for possession and rent against both Frank Riggieri and Tina Budzinski, and a judgment against the plaintiff John Riggieri for possession. Defendants’ Memo at 4 & Exhibit C. As a result of an execution issued by the Worcester District Court, the premises were delivered to the defendants after the plaintiff *399 removed his personal properly. Defendants’ Memo at 4 & Exhibit D. No appeal has been taken from the judgment of the Worcester District Court in this summary process case. Since the premises were delivered to the defendants, they entered into a lease agreement with Joshua Shea and Eric Levins for the premises. Defendants’ Memo at 5.
4. The plaintiff places primary reliance on several documents to support his claim that the diner is personal property owned by the plaintiff. First, plaintiff relies on a deed dated October 2, 1950 which he maintains is the deed for 300 Southbridge Street from Duprey Realty Corporation to S&B Realty Corporation. Plaintiffs Complaint, Exhibit A. While it is true, as plaintiff maintains, that this deed makes no reference to buildings, a plan on record at the time shows a brick and wooden factory building and a smaller structure that appears to consist of two sections in an “L” shape. Defendant’s Memorandum in Opposition to the Plaintiffs Motion for a Preliminary Injunction (“Defendants’ Opposition”), Exhibit A. Moreover, the Duprey deed does make reference to a lease that was due to expire in 1958. Plaintiff also maintains that the individual identified as the leasee in the 1950 deed, one “Soter,”[1] sold the Miss Worcester Diner to one Charles Mitro in 1961 and “thereafter, between 1961 and 1989 the diner was either gifted or sold four times until 1990 when it was purchased by Francis Riggieri, the father of Riggieri [the plaintiff].” Plaintiffs Memorandum in Support of a Motion for a Preliminary Injunction (“Plaintiffs Mem”), at 3. Plaintiff also relies on the bill of sale from one J. Laurence Ciccolo to Frank Riggieri (plaintiffs father) which lists among the assets sold “The Diner known as ‘Miss Worcester Diner’ presently located at 300 Sturbridge Street, Worcester” including all fixtures and the goodwill of the business. Plaintiffs Memo, Exhibit A. Accompanying this sale was a Uniform Commercial Code Financing Statement in which Ciccolo, as the secured pariy, lists the diner known as “The Miss Worcester Diner” as part of the personal property of the debtor, Francis Riggieri. Plaintiffs memo, Exhibit B. In addition, plaintiff relies on the fact that his father operated the diner from 1990 to 1996 at which time he rented it to one Tina Budzinski. Finally, as evidence of the continued status of the diner as personalty, the plaintiff points to the fact that his father, Francis Riggieri, sold the diner to him on February 9, 2004. Plaintiffs Memo, Exhibit C. Based on these historical facts, plaintiff maintains that since the expiration of the Soter lease in 1958, all subsequent operators of the diner have operated it as tenants-at-will of the defendants, and throughout that period, until this year, the defendants did not exercise any dominion or control over it, and did not approve of the “sale” of the diner from one operator to the other. Plaintiffs Memo at 4.
5. The defendants, on the other hand, do not dispute that they leased the diner to various persons between 1951 and 2003, but contend that it was not until 2003 that they learned that anyone claimed that they, and not the defendants, owned the diner. In support of their claim that the diner is real properly and not personal properly, the defendants point out that the entire restaurant is taxed by the City of Worcester as real estate and the tax is assessed against the defendant trust. See Defendants’ Memo at 2 & Exhibit B.
3. Discussion
6. Standard for granting a preliminary injunction. In deciding whether to grant a preliminary injunction, the court is required to perform a multi-part analysis. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). Initially, the court must determine whether the moving party has demonstrated a likelihood of success on the merits, and that it faces a substantial risk of irreparable harm — losses that cannot be repaired or for which compensation will not be adequate after final judgment — if the motion for the preliminary injunction is not granted. Id. at 617 & n.ll. If the moving pariy has met this burden, the court must then engage in a balancing test in which the irreparable harm faced by the moving party is compared to the harm that an injunction would inflict on the other pariy. “If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the inunction would create for the opposing party.” Id. at 617. In balancing these factors, “[w]hat matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id. The stronger the case is on the merits, the less is required to be shown in terms of irreparable harm. See Gately v. Commonwealth, 2 F.3d 1221, 1224-25, 1234 (1st Cir. 1993). Furthermore, in an appropriate case, “the risk of harm to the public interest also may be considered.” Brookline v. Goldstein, 388 Mass. 443, 447 (1983). See also LeClair v. Town of Norwell, 430 Mass. 328, 337 (1999); Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984).
7. Determining whether chattels are real property or personal property. In cases of this type, the question of whether a chattel is real property or personal property depends on which one of three categories it falls into: (1) chattels that are so affixed that they either have lost their identity as personal property or cannot be removed without material injury to the real estate, (2) chattels that are plainly furniture and thus retain their identity as personal property, and (3) chattels whose identity as real property or personal property turns on the intention of the parties under all of the *400 circumstances. Stone v. Livingston, 222 Mass. 192, 195 (1915). In the case of chattels that fall into category (1) or (2), the physical facts regarding the items control notwithstanding the intention of the parties. Id. With regard to chattels that fall into category (3), their character as real property or personal property is a question of fact for a jury. Id. at 195-96.
8. Both the plaintiff and the defendants point to the decision in Titcomb v. Carroll, 287 Mass. 131 (1934), where the Supreme Judicial Court was called upon to settle a question about whether a dining car was real or personal property. In Titcomb, supra, one O’Leaiy leased land from the plaintiffs predecessor, purchased a dining or lunch car, and located the car on the leased premises from which they operated a retail business. O’Leary assigned his interest in the lease and sold his interest in the dining car to one McAndrews. McAndrews, in turn, gave a chattel mortgage in the dining car to one Busconi as security for a promissory note and Busconi assigned it to the defendant bank as security for his own promissory note. The plaintiff acquired the real property by deed subject to certain tenancies and leases. The plaintiff was paid rent under his lease through the month of May 1931. On August 31, 1931, the defendant McAndrews notified the plaintiff that he was to vacate the leased premises by November 30, 1931. The plaintiff made no claim that the dining or lunch car belonged to him until early in 1932, after the defendant McAndrews had notified him that he was going to move it from the premises. Id. at 133-34. A court-appointed Master found the following facts:
The dining or lunch car is a “stock pattern car,” weighing seven tons, which was rolled on its own wheels to the premises and remained there on wheels for about a year and a half. Its weight is now carried substantially by one pair of wheels still under and attached to it, and by large wooden blocks which have been substituted for the detached pair of wheels. Some portion of the weight, however, rests upon a wall. “The wall was built of 8 inch blocks made of sand and cement which did not come quite up to the chassis of the dining car. The lower course was from six to eight inches under the surface of the ground. The opening between the said chassis and the top of the wall, as well as the wall itself was stuccoed which gave it the appearance of a solid wall right up to the chassis. There are eight steel beams running crosswise below the floor of the lunch car and forming a part thereof, four of them being I beams and 4 channel beams or bars, the ends of which rest upon the wall. On top of these beams are stringers going lengthwise of the lunch car. There is a wooden sill, also a part of the lunch car, underneath the ends and sides of the lunch car. The channel bars are forty-six inches between centers. The channel bars are embedded in the wall in this manner; there is a wooden block, four inches long and three inches wide, embedded in the wall on which the channel bars rest. The I beams are similarly embedded . . . the lunch car is not attached to the wall except that two iron truss rods attached at the ends of said lunch car to the under part thereof and having the general shape of an elongated inverted arch project downward into the wall which is built around them... [and] the lunch car can be readily removed but, on account of the embedding of said truss rods in the wall, it cannot be removed without substantial injury to the wall.”
The wall was erected before the plaintiff purchased the real estate. He had no knowledge of the circumstances under which it was built or the length of time it had been built before he received his deed of the premises, and no notice of the defendant McAndrews’s title to the dining or lunch car except so far as such notice appears in his agreement to acquire the premises by exchange.
The master found, so far as it is a question of fact, “as a conclusion from . . . [his] foregoing findings of fact and the pleadings, that the lunch car is personal property; that it did not pass to the plaintiff under his deed from said Burr; and that the plaintiff has no title thereto.” He found also, so far as they are questions of fact, “that the lunch car belonged to the defendant McAndrews until he sold it to the defendant Carroll. . . that it is now the property of said Carroll. . . [and] that the mortgage held by the Bank is a valid chattel mortgage on said lunch car as security for the payment of the mortgage note given by the defendant McAndrews to said Joseph Busconi and by him assigned to the Bank.”
Id. at 134-35.
In upholding the Master’s Report, the court reasoned that the dining car fell into the third category under Stone, supra of chattels whose character is determined by reference to the intention of the parties because the “physical facts” were not conclusive one way or the other.
The physical facts found, though of some weight as tending to show the intention of the parties are not as matter of law conclusive of the nature of the property, as real or personal, but are to be weighed with other facts showing intention. The character of the article as well as the mode of its annexation to the land is to be considered. The car was a complete unit in itself of a “stock pattern,” not peculiarly adapted for use in connection with the particular land. It was not erected upon the land as a building but was constructed off the land and moved to the land on wheels like a vehicle. Even after two of the wheels were taken off and the wall was built the identity of the car was not lost and it could have been readily removed from the land without damage to itself and, obviously, could have been used elsewhere..'. Neither the car nor the wall appears to have been essential to the enjoyment of the land in its condition when the car was moved *401 to it or when the wall was built. And the mode of annexation of the car to the wall differs in no material degree from the mode of annexation of one of the portable garages to the cement floor in Medford Trust Co. v. Priggen Steel Garage Co., where the damage resulting to the floor did not preclude a finding that the garage was personalty. Though, as the master found, the car “on account of the embedding of said truss rods in the wall... cannot be removed without substantial injury to the wall” it does not appear that removal of the car would result in any injury to the plaintiffs freehold as a whole. The wall, even if itself realty, was purely incidental to the use of the land as a location for the car and somewhat similar to means of attachment of chattels, “merely to steady them for their more convenient use.” The physical facts, therefore, do not preclude a finding that the car remained personal property if such was the manifested intention of the parties.
The facts show that it was not the intention of the parties to the lease that the dining or lunch car should be annexed to the land so as to increase permanently the value thereof. The structure and characteristics of a dining or lunch car in general, and of this car in particular, so indicate, as do the facts, that the lease was of a “location for dining car” and that when given it was for three years only, though it was later extended for three years. And the fact that the car was bought by the lessee on a conditional sale agreement also is some evidence that he intended that it should remain personally and, even if unknown to the lessor, has a bearing upon the nature of the property. The plaintiff, upon whom is the burden of proof that the car is a part of the really, has not proved any circumstances showing a change, at the time the wall was built, in the relation between the lessor and the lessee, nor in their intention with reference to the car beyond the fact that the wall was built in the manner shown. Furthermore, the giving of a chattel mortgage by the lessee thereafter, while it could not change the nature of the car if it had already become really, is some evidence of his intention. These evidences of intention that the car should remain personalty overcome any inference of intention that the car should become a part of the realty which might be drawn from its mode of annexation to the land. On all the facts the conclusion of the master was right that the car is personal property.
Titcomb v. Carroll supra, 287 Mass. 136-37 (citations and quotations omitted).
9.In the present case, unlike in Titcomb, supra, the “physical facts” present a compelling case for finding that the dining car is within the first category of chattels as explained in Stone, supra and thus part of the real estate. In the present case, the dining car was never a true train car because it never had axles or wheels. More significantly, substantial alterations of the real estate were made when it was moved to the site. The plaintiff does not dispute that a cellar hole was dug, utilities were installed, an attached kitchen was constructed and a chimney was built around it. As the diner itself constitutes the fourth wall of the kitchen, its removal would not only leave a hole in the ground but a kitchen with only three walls surrounding it. Further compelling evidence of the “physical facts” was supplied by the defendants at the hearing on the motion for a preliminary injunction in the form of numerous photographs of the dining car and the surrounding structure.
10. Unlike in Titcomb, supra, where the dining car was supported by a previously existing cement wall into which truss rods were embedded that in turn supported or steadied the car, here the dining car, which is constructed of wood, is built on top of steel channel beams and steel I-beams are affixed to a foundation below it as well as to the kitchen. In the cellar below it, there is plumbing, a furnace, an exhaust, and utiliiy conduits all of which would be exposed if the car was removed. In the attached kitchen, which as noted earlier would be left exposed as well if the car was removed, are bathrooms, the stove and a food preparation area. The wooden dining car section contains the grill and the seating area for customers. See General Heat & Appliance Co. v. Goodwin, 316 Mass. 3 (1944) (“We think that anyone who saw the house would at once conclude that the Conditionair [a heating unit] was part of it. The association between the Conditionair and the real estate was expected to be permanent. The Conditionair was necessary to the completeness of the dwelling-house and was essential to the enjoyment and use of the building as a place of abode. The central heating plant of a dwelling house is not a piece of furniture”) (citations omitted). Contrast Grinnel v. Gardiner Trust Co., 288 Mass. 385 (1934) (“The sprinkler system could be removed by unscrewing the joints in the pipes and unscrewing the hangers. There was testimony that the removal of the sprinkler system would have no effect upon the building. On this evidence, particularly in view of the nature and condition of the building, the finding of the judge that the sprinkler system was removable without serious damage to the real estate was not plainly wrong”).
11. Under the circumstances, the inference is inescapable that the wooden diner was installed to improve the real properly, and while its original character may have permitted a finding that it was personal property, there is no longer any basis for such a finding. Contrast, Auburndale Plaza, Inc. v. Sarni Cleaners of Framingham, Inc., 10 Mass. L. Rptr. 671 (Mass. Super. 1999) (Fahey, J.) (clearly material facts in dispute over whether an underground storage tank was part of the real estate or personally). In addition, on the record before me, there is no clear manifestation by the *402 original parties of an intent that the dining car remain personalty. Contrast Titcomb, supra (“The facts show that it was not the intention of the parties to the lease that the dining or lunch car should be annexed to the land so as to increase permanently the value thereof’). The evidence offered by the plaintiff simply suggests that the contemporary operators of “The Miss Worcester Diner” executed documents suggesting it was personalty and not real property. The view of these individuals, however, is not a substitute for evidence that this was the intention of the original parties.
12. For the above reasons, the plaintiff has failed to demonstrate that it has a reasonable likelihood of success on the merits and, therefore, the motion for a preliminary injunction is DENIED.

The plaintiff refers in his papers to this person as “Sotor,” but the name is spelled “Soter” in the Duprey deed.